**UNITED STATES of America, Plaintiff,**

v.

**Musiliu BALOGUN, et al., Defendants.**

**No. 96 CR 518.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 28, 1997.

---

Steven R. Shanin, Chicago, IL, for Anthony Smith.

Robert Clarke, Chicago, IL, for Kafayat Adedolapo Windokun.

Jerry Kurz, Chicago, IL, for Folake Olukoga.

Donald Young, Donald V. Young & Associates, Chicago, IL, for Jumoke Soneye.

Scott Frankel, Frankel & Cohen, Chicago, IL, for Tajudeen Aroworade.

Linda Amdur, Chicago, IL, for Victoria Olabunmi Onimole.

Gary Ravitz, Chicago, IL, for Mornkat Adola Asanike.

Rick Halprin, Chicago, IL, for Akintoye Sode.

Paul Brayman, Chicago, IL, for Odunyemi Awolesu.

James McGurk, Chicago, IL, for Abimbola Oyenubi.

Kenneth Cunniff, Chicago, IL, for Mukaila Balogun.

Stephen Eberhardt, Chicago, IL, for Adebayo Majekodunmi.

Steven Shobat, Chicago, IL, for Olajumoke Adebimpe Hall.

Eugene Steingold, Chicago, IL, for Tawakali Alausa.

Marianne Jackson, Chicago, IL, Robert Wolf, New York City, for Ronica Douglas.

Michael O' Connell, O'Connell & Ryan, Chicago, IL, for Lucinda Cross–Hill.

Brian R. Havey, Jacqueline Ross, Asst. U.S. Attys., Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

The twenty-four [1] defendants in this case allegedly were part of a Nigerian heroin ring. Each was charged with various offenses such as conspiracy to import or distribute heroin and money laundering. Trial is approaching, and each defendant has filed the gamut of pre-trial motions, which are now before the court.

1. Some defendants remain fugitives, and so are not among the defendants now participating in the trial before this court.

### A. Motions to dismiss Count One on the ground that it is duplicitous or, in the alternative, to require the government to elect on which charge it wishes to proceed

Defendants Olajumoke Hall, Mukaila Balogun, Victoria Olabunmi Onimole, Adebayo Majekodunmi, and Anthony Smith have moved to dismiss Count One of the indictment against them. Count One charges all 24 defendants with violations of 21 U.S.C. §§ 846 and 963, for conspiracy to import heroin and to possess with intent to distribute heroin. Defendants make essentially the same argument: that Count One is duplicitous because it charges two offenses. Defendants contend that a count that charges two or more offenses must be dismissed or severed.

The government responds that it intends to seek return of a superseding indictment charging all 24 defendants with separate counts of conspiracy to import heroin and conspiracy to distribute and possess with intent to distribute heroin. The government thus argues that defendants' motions to dismiss Count One or to require the government to elect only one charge on which to proceed should be denied as moot.

■ Based on the government's representation, the court agrees that defendants' motions should be denied as moot. However, the motions are denied without prejudice and with leave to renew if the government does not obtain the superseding indictment.

### B. Motions for severance

Defendants Olajumoke Hall, Mukaila Balogun, Kafayat Adedolapo Windokun, Adebayo Majekodunmi, and Victoria Olabunmi Onimole have brought motions to sever themselves from the trial of the remaining defendants. Each defendant makes essentially the same argument: he or she should not have been joined in the indictment to begin with, but even if joinder was proper, it is severely prejudicial to that defendant.

Federal Rule of Criminal Procedure 8(b) provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

FED. R. CRIM. P. 8(b).

Thus, where, as here, a defendant in a multiple-defendant case challenges his joinder in the case, the court asks whether the co-defendants participated in the "same series of acts or transactions constituting an offense or offenses." FED. R. CRIM. P. 8(b); *United States v. Diaz*, 876 F.2d 1344, 1355 (7th Cir.1989). The "'usual meaning [of 'same series of acts or transactions'] is acts or transactions that are pursuant to a common plan or common scheme, which is to say (in the usual case) that the acts or transactions are parts of a single conspiracy.'" *Diaz*, 876 F.2d at 1355 (quoting *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir.1985) (citations omitted)). Consequently, "'a conspiracy charge is a proper basis for joinder under Rule 8(b).'" *Diaz*, 876 F.2d at 1355–56 (quoting *United States v. Garner*, 837 F.2d 1404, 1412 (7th Cir.1987), *cert. denied*, 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988)). Proper joinder is determined from the face of the indictment. *Diaz*, 876 F.2d at 1356. "'Rule 8(b) only requires that the conspiracy be alleged—there is no requirement that the government demonstrate, at the pleading stage, sufficient evidence to support joinder.'" *Diaz*, 876 F.2d at 1356 (quoting *Garner*, 837 F.2d at 1412.)

"'[O]nce the Rule 8 requirements [are] met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14....'" *Diaz*, 876 F.2d at 1357 (quoting *United States v. Lane*, 474 U.S. 438, 447, 106 S.Ct. 725, 731, 88 L.Ed.2d 814 (1986)). Federal Rule of Criminal Procedure 14 provides that even properly joined defendants may obtain a severance "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants." FED. R. CRIM. P. 14. However, "[the] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). Furthermore, "'the trial judge should give deference to the "strong public interest in having persons jointly indicted tried together."'" *Diaz*, 876 F.2d at 1357 (quoting *United States v. Percival*, 756 F.2d 600, 610 (7th Cir.1985) (quoting *United States v. Papia*, 560 F.2d 827, 836 (7th Cir. 1977))).

Defendants make virtually identical arguments, but because the allegations against each defendant differ in some respects, the court will address each defendant's motion separately.

### 1. Olajumoke Hall

Hall contends that she is named in only three counts of the 39–count indictment, and that she is not charged with any substantive heroin distribution or money laundering counts as are the other defendants. Hall thus argues that she was misjoined with the other defendants in the indictment; and that even if she was not misjoined, her joinder severely prejudices her right to a fair trial.

#### a. *Joinder under Rule 8(b)*

Hall contends that she has not been named as a participant in the money laundering conspiracy. She also contends that her only connection with any other of her co-defendants is through co-defendant Jumoke Soneye, with whom she allegedly had a conversation that facilitated either the conspiracy to import or to possess with intent to distribute heroin as charged in Count One. Thus, Hall argues that the charges against her are not alleged to have arisen out of the same series of acts or transactions as nearly all of the conduct alleged in Count One or any other count, and that her sole connection to her co-defendants and the allegations of the indict-

ment, two conversations with Soneye, cannot support her joinder in the indictment.

■ The court finds that the requirements of Rule 8(b) are met with respect to Hall. A "conspiracy charge provides a sufficient basis to join the defendants." *United States v. Briscoe,* 896 F.2d 1476, 1515 (7th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). Count One names all 24 defendants as co-conspirators. It charges defendants, including Hall, with engaging in a common scheme to import or distribute and possess with intent to distribute heroin. Furthermore, the government has represented that in the superseding indictment, Hall and her co-defendants will be charged in two separate conspiracy counts, one for importation and one for distribution of heroin. The indictment alleges that the importation and distribution of heroin were two closely related core functions of the overall scheme headed by Soneye, and that Hall participated in and furthered this scheme by supplying heroin to Soneye and conducting phone conversations to facilitate Soneye's heroin operations.

Consequently, the court finds that Hall was properly joined as a defendant in this case, given Hall's alleged participation in the conspiracy charged in Count One.

b. *Severance under Rule 14*

Hall has not pointed to any specific trial right of hers that will be compromised by a joint trial. She also has failed to explain how the jury will not be able to make a reliable judgment about her guilt or innocence in a joint trial. For example, as the government notes, Hall has not asserted any of the well-known forms of prejudice, such as co-defendants' antagonistic defenses or the introduction of a co-defendant's extrajudicial confession that incriminates Hall.

■ Rather, Hall merely speculates that she will be prejudiced by a joint trial because of the large amount of evidence attributable to other defendants that would not be attributable to her. But "mere 'disparity in the evidence' does not support severance." *United States v. Alex,* 788 F.Supp. 1013, 1015 (N.D.Ill.1992) (quoting *United States v. Caliendo,* 910 F.2d 429, 438 (7th Cir.1990)).

Moreover, " 'disparity in the evidence ... does not independently establish "actual prejudice." ' " *Alex,* 788 F.Supp. at 1015 (quoting *Caliendo,* 910 F.2d at 438 (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 754–44 (7th Cir.1988))). Further, the court notes that Hall acknowledges that none of this evidence will be admissible or used against her. Hall's speculation raises no danger that careful trial management and jury instructions cannot prevent. *See Alex,* 788 F.Supp. at 1015 (noting that court would instruct the jury to give separate consideration to each defendant and to separate each charge against him).

Hall also argues that because all defendants are black and of Nigerian descent, most are not citizens of the United States, and some are illegal aliens, the jury, with its "nativist tendency," will tend to group persons of like race and ancestry "as birds of a feather," and therefore will be unable to sort out the evidence against Hall from the evidence against the rest of the defendants. Aside from the fact that Hall's presumption is an affront to the jury, the court finds that it is mere conjecture and unsupported by any credible facts.

Such speculation and conjecture as Hall raises do not establish that Hall will not receive a fair trial if she is tried with her co-defendants, and do not outweigh the strong public interest in having persons jointly indicted tried together. Because Hall has not established that a severance is necessary to protect her trial rights, the court denies Hall's motion for a severance.

### 2. Mukaila Balogun

a. *Joinder under Rule 8(b)*

Balogun contends that he has not been named as a participant in the money laundering conspiracy, and that no allegations in Count One involve him in the importation conspiracy. He also contends that his only connection with any other of his co-defendants is through co-defendants Jumoke Soneye and Musiliu Balogun. Thus, Balogun argues that the charges against him are not alleged to have arisen out of the same series of acts or transactions as nearly all of the

conduct alleged in Count One or any other count, and that his sole connection to his co-defendants and the allegations of the indictment, two alleged wire transfers of drug proceeds, cannot support his joinder in the indictment.

In response, the government contends that Balogun's misjoinder argument has no merit because Balogun was an integral member of the conspiracy. The government contends that the indictment charges that Balogun actively participated in the conspiracy with the two leading figures of the conspiracy—Musiliu Balogun, Balogun's brother, who supplied the heroin out of Thailand, and Jumoke Soneye, the hub of the Chicago portion of the conspiracy. The government contends that the indictment charges, and the government will prove at trial, that Balogun assisted Musiliu Balogun and Soneye by wire-transferring heroin proceeds, paying couriers' travel expenses, and interceding with his brother, Musiliu Balogun, on Soneye's behalf to enable Soneye to continue purchasing heroin from Musiliu Balogun.

█ The court agrees with the government that the requirements of Rule 8(b) are met with respect to Balogun. A "conspiracy charge provides a sufficient basis to join the defendants." *Briscoe*, 896 F.2d at 1515. Count One names all 24 defendants as co-conspirators. It charges defendants, including Balogun, with engaging in a common scheme to import or distribute and possess with intent to distribute heroin. The indictment alleges specific acts taken by Balogun in furtherance of the conspiracy, and the government has represented that its evidence will show that Balogun was an integral part of the conspiracy. Balogun has not contradicted the government's representations.

The court also agrees with the government that Balogun need not participate in every act in furtherance of the conspiracy to be properly joined, but need only have knowingly joined the conspiracy. The government contends that the indictment charges and its evidence will show that this was the case with Balogun. Again, Balogun has not contradicted the government's representations.

Consequently, the court finds that Balogun was properly joined as a defendant in this case, given his alleged participation in the conspiracy charged in Count One.

### b. *Severance under Rule 14*

Balogun has not pointed to any specific trial right of his that will be compromised by a joint trial. He also has not explained how the jury will be unable to make a reliable judgment about his guilt or innocence in a joint trial. For example, Balogun has not asserted any of the well-known forms of prejudice, such as co-defendants' antagonistic defenses or the introduction of a co-defendant's extrajudicial confession that incriminates Balogun.

Rather, Balogun states that Count One sets forth two separate conspiracies in violation of two separate statutory offenses, and since he is not named in the importation conspiracy, the presumption of a joint trial that normally attends those charged in a conspiracy does not apply in this case. Balogun also argues that because he was not named in the importation conspiracy, co-conspirator statements relating to the importation conspiracy may not be introduced against him.

Both arguments fail. The government has stated that it intends to obtain a superseding indictment that will set forth the importation conspiracy in one count and the distribution conspiracy in another count, and that all 24 defendants, including Balogun, will be named in each count. Moreover, the government has represented that Balogun was an integral part of the importation conspiracy, and that evidence regarding the importation conspiracy will be offered against Balogun as well as his co-defendants.

Balogun also speculates that he will be prejudiced by a joint trial because of the large amount of evidence attributable to other defendants that would not be attributable to him. As the court noted in addressing Hall's severance motion above, mere disparity in evidence does not support severance or in itself create actual prejudice to a defendant. *See Alex*, 788 F.Supp. at 1015. Also as the court noted above, Balogun's speculation raises no danger that careful trial management and jury instructions cannot pre-

vent. *See id.* Moreover, the government has represented that all of the heroin sought to be introduced against Balogun's co-defendants will be offered against Balogun, as well, since he was a core member of the importation conspiracy who facilitated the heroin dealings between his brother in Thailand and Soneye in Chicago.

Balogun also contends that the benefits of a joint trial are not present here. He contends that given the slight evidence against Balogun, his absence from a joint trial will not decrease appreciably the time to try the remaining defendants, and a separate trial of him will not impose a significant burden on the government. The government counters that because of Balogun's role in facilitating the heroin-dealing relationship between Musiliu Balogun and Soneye, a separate trial of Balogun would require the government to duplicate most of the evidence offered at the trial of the rest of the defendants, thereby wasting, not conserving, judicial resources. The court agrees that based on the allegations in the indictment and the government's representations regarding the evidence against Balogun, a separate trial of Balogun would waste judicial resources.

Finally, Balogun argues, as did Hall, that because all defendants are black and of Nigerian descent, most are not citizens of the United States, and some are illegal aliens, the jury, with its "nativist tendency," will tend to group persons of like race and ancestry "as birds of a feather," and therefore will be unable to sort out the evidence against him from the evidence against the rest of the defendants. As the court noted in addressing Hall's motion, that presumption is mere speculation and unsupported by any credible facts.

██ The court finds that Balogun has not established that he will not receive a fair trial if he is tried with his co-defendants, overcome the presumption of trying properly joined members of a conspiracy together, or shown that his interest in being tried separately outweighs the strong public interest in having persons jointly indicted tried together. Moreover, Balogun's contention that no connection, or at least only a tenuous one, exists between him and his co-defendants is belied by the indictment and the government's representations.

Because Balogun has not established that a severance is necessary to protect his trial rights, the court denies Balogun's motion for a severance.

### 3. Kafayat Adedolapo Windokun

Windokun moves to sever her trial from the trial of her co-defendants pursuant to Federal Rule of Criminal Procedure 14. Windokun claims that exculpatory evidence may exist that may not be available to her if she is tried with the other defendants; that the evidence indicates that Windokun did not know of the heroin importation scheme; and that the jury would not be able to sort out the evidence against Windokun or exculpating Windokun if it is faced with a massive body of damning evidence regarding the other defendants.

██ Windokun bases her severance request on *Zafiro*. There, the Supreme Court stated:

> When many defendants are tried together in a complex case and they have markedly different degrees of culpability, th[e] risk of prejudice is heightened .... Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice .... Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial ....

*Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938 (citations omitted).

*Zafiro* is of no help to Windokun. First, it appears that the government will present evidence that she was a major part of the heroin importation and distribution conspiracy, in that she laundered money for Soneye, the alleged leader of the conspiracy. Thus, at least based on the government's representations regarding its evidence against Windokun, Windokun does not have a degree of culpability that is markedly different from the other defendants.

Moreover, Windokun has not pointed to any evidence that would be probative of her guilt, but would be admissible only against one of her co-defendants and not against her. In fact, the government has represented that it will offer the same evidence against Windokun and her co-defendants, and therefore that there will be no danger of prejudicial spillover from evidence offered at a joint trial that would be admissible against some defendants but not against Windokun.

Finally, Windokun's claim that some exculpatory evidence may exist does not mandate that Windokun be tried separate from the other defendants. Windokun claims that Soneye made a statement that may exculpate Windokun, and that Windokun herself was captured on tape stating that she should call police about a large sum of money being stolen from her on one of her trips to the Far East. She claims that this exculpatory evidence would not be available to her, or could not be presented with the requisite force, if she were tried with the other defendants.

█ When a defendant requests a severance based upon an allegation that a co-defendant will offer exculpatory testimony, the court considers " '(1) whether the co-defendant's testimony would be exculpatory; (2) whether the co-defendant would in fact testify; and (3) whether the testimony would bear on defendant's case.' " *Granada v. United States,* 51 F.3d 82, 84 (7th Cir.1995) (quoting *United States v. Chrismon,* 965 F.2d 1465, 1476 (7th Cir.1992)), *cert. denied,* —— U.S. ——, 116 S.Ct. 970, 133 L.Ed.2d 890 (1996). When deciding the motion for severance, the court keeps in mind the strong interest in joint trials in conspiracy cases. *Granada,* 51 F.3d at 84; *Briscoe,* 896 F.2d at 1516–17.

Windokun has not shown that any of these factors militate in favor of a severance. She does not even hint at the nature of Soneye's exculpatory statement, nor suggest that Soneye would be willing to testify on her behalf at a separate trial. Moreover, Windokun has not submitted an affidavit by Soneye stating that Soneye would testify on Windokun's behalf at a separate trial and setting forth the

nature of her testimony. Windokun merely offers the unsupported statement of her attorney that the government had informed him that Soneye had made statements that may exculpate Windokun,[2] and that he believed that another defendant may have made similar statements. At most, then, Windokun "presented only a possibility that [Soneye] would testify to exculpate [her] at a separate trial." *United States v. Lopez,* 6 F.3d 1281, 1285 (7th Cir.1993). "That is not enough to require severance." *Id.* (citing *United States v. Studley,* 892 F.2d 518, 525 (7th Cir.1989)).

Accordingly, Windokun's motion for a severance is denied.

### 4. Adebayo Majekodunmi

Majekodunmi contends that his joinder in the indictment with his co-defendant Jumoke Soneye is severely prejudicial to him, because Soneye, his sister, wishes to present exculpatory information regarding Majekodunmi but probably will refuse to testify at a trial in which she is a participant.

As the court noted above, where the reason for a severance is the need for a co-defendant's testimony, the defendant must show that (1) the co-defendant's testimony would be exculpatory; (2) the co-defendant would testify at the trial; and (3) the testimony would bear upon the defendant's case. *See Granada,* 51 F.3d at 84; *Lopez,* 6 F.3d at 1285. Majekodunmi claims that he needs the testimony of Soneye to exculpate him, that the testimony will not be cumulative, that the only way Soneye will testify is if she is tried separately from Majekodunmi, and that Soneye has told Majekodunmi's counsel that she would testify that Majekodunmi is innocent of the charges and that she has related that to the government.

Majekodunmi therefore asks the court to hold a hearing to determine whether Soneye is willing to testify with exculpatory evidence on behalf of Majekodunmi; and whether Soneye will refuse to testify at a trial in which she is a participant, but will testify at a separate trial of Majekodunmi. Majekodun-

---

2. The government denies that Soneye made any exculpatory statements and that it told Windo-

kun's counsel that Soneye had made such statements.

mi urges that if the court determines that Soneye would present exculpatory testimony at a severed trial, the court should order severance.

The government responds that a request for a hearing is unprecedented. It contends that Majekodunmi has the burden to establish some basis for his contention in the form of an affidavit, and to establish with specificity what the exculpatory testimony would be; the relevance of such testimony to his defense, in light of the evidence against him; the likelihood of prejudice from the absence of such testimony; the likelihood that such testimony would be impeached; and the effects on judicial economy. *See United States v. Dirden*, 38 F.3d 1131, 1141 n. 13 (10th Cir.1994). The government argues that Majekodunmi has done no more than offer conclusory statements that Soneye had advised that she would testify that he is innocent of the charges. The government also denies that Soneye told the government that she would testify that Majekodunmi is innocent of the charges and states that Soneye made no statements to the government exculpating Majekodunmi.

The court agrees with Majekodunmi that hearings on motions for severance are not unprecedented. *See, e.g., Lopez*, 6 F.3d at 1285 (noting that the district court had held a severance hearing). However, the court agrees with the government that it was Majekodunmi's burden to show that a severance is necessary, and Majekodunmi has offered nothing but his own conclusory statements to support a severance.

Like Windokun, Majekodunmi has failed to offer an affidavit by Soneye setting forth with some specificity the nature of her testimony on Majekodunmi's behalf and stating that she will testify on his behalf at a separate trial of him. As the court noted above, at most, Majekodunmi has "presented only a possibility that [Soneye] would testify to exculpate him at a separate trial," and "[t]hat is not enough to require severance." *Lopez*, 6 F.3d at 1285 (citing *Studley*, 892 F.2d at 525).

 While the court has the option to hold a severance hearing, nothing requires it to do so. Because Majekodunmi has not even submitted an affidavit in support of his severance request, the court declines to hold a hearing on the severance.

Accordingly, the court denies Majekodunmi's motion to sever.

## 5. Victoria Olabunmi Onimole

Onimole contends that she was improperly joined in the indictment with her co-defendants. She claims that she is not alleged to have been involved in heroin distribution in Chicago, but is alleged to have negotiated with heroin supplier Tijani and to have introduced co-defendant Jumoke Soneye to Tijani. She claims that heroin supplied by Tijani is not alleged to be heroin distributed by Soneye in Chicago. Thus, according to Onimole, she is not alleged to have participated in "the same acts or transactions or same series of acts or transactions constituting an offense or offenses" as her co-defendants. *United States v. Moya–Gomez*, 860 F.2d 706, 766 (7th Cir.1988).

Onimole also contends that even if she was properly joined in the indictment, she would suffer prejudice from the joinder. She claims that multiple conspiracies make a joint trial more difficult in this case. She also contends that to the extent she is not alleged to have been involved in the Chicago-based Soneye/balogun/olubi/Smith importation conspiracy or the Soneye distribution conspiracy, co-conspirator statements relating to those conspiracies may not be introduced against her. She also claims that she will be prejudiced from the spillover emanating from proof on counts to which she has no connection. Finally, she makes the same arguments as the foregoing defendants regarding being grouped with her co-defendants as "birds of a feather" because of their like race and ancestry.

The government counters that Onimole's claims simply are not correct. It states that Onimole is charged as a member of the distribution and importation conspiracy in Chicago, and that it is alleged that, among other things, Onimole helped to wire heroin proceeds to Musiliu Balogun, and that she helped to bring heroin loads to Chicago. The government also contends that Tijani, who Onimole introduced to Soneye, is charged as

a member of the conspiracy, and that Soneye dealt with both Tijani and Musiliu Balogun. The government contends that Onimole's role went well beyond that of an intermediary between Tijani and Soneye, in that, as alleged in the indictment, she actively assisted Soneye in wire-transferring heroin proceeds and sending money couriers to Thailand. The government states that the evidence offered against Onimole's co-conspirators likely would be offered against Onimole, as well, and that no prejudice would occur from a joint trial. For this reason, the government argues, it would not conserve judicial resources to sever Onimole from her co-defendants.

■ The court finds that the indictment makes clear that Onimole is charged as an integral member of the heroin importation and distribution conspiracies, and that she engaged in many of the same acts and transactions as her co-defendants. Because of Onimole's alleged relatively substantial role in the conspiracies, the court fails to see how she will be prejudiced by a joint trial with her co-defendants. Furthermore, the government's representations indicate that to try Onimole separately from her co-defendants would simply waste judicial resources, since the same evidence likely will be offered against Onimole as against her co-defendants. Last, the court has addressed the "birds of a feather" argument sufficiently to make repeating its conclusion here redundant. Suffice it to say that the argument is without merit.

Accordingly, the court denies Onimole's motion to sever.

## C. *Motion for a bill of particulars*

Defendants Olajumoke Hall, Mukaila Balogun, Adebayo Majekodunmi, and Anthony Smith move for bills of particulars to provide them with more details about the allegations in the indictment against them.

■ Federal Rule of Criminal Procedure 7(f) authorizes the court to order the filing of a bill of particulars whenever the indictment fails to set forth the elements of the offense charged and sufficiently apprise the defendant of the charges to enable him to prepare for trial. *See United States v. Kendall*, 665 F.2d 126, 134 (7th Cir.1981) (quotation omitted) ("[t]he test for whether a bill of particulars is necessary is 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial'"), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). While the defendant is entitled to know the factual details of the offense with which he is charged, he is not entitled to know the details of how the offense will be proved. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir.), *cert. denied*, 502 U.S. 810, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); *Kendall*, 665 F.2d at 135. Thus, a bill of particulars cannot be used to explore the government's list of witnesses or the evidentiary details of its case. *Kendall*, 665 F.2d at 134.

Though defendants' arguments are basically the same, the allegations against defendants differ in some respects; therefore, the court will address each defendants' motion individually.

### 1. Olajumoke Hall

Hall seeks details about the allegation in the indictment that Hall supplied co-defendant Jumoke Soneye with heroin to distribute when Jumoke's own supply ran low. Specifically, Hall wants the government to identify on what days she is alleged to have supplied heroin to her co-defendant Jumoke Soneye; what quantities she is alleged to have provided; and where the transactions occurred.

In the court's view, Hall seeks evidentiary details that exceed the proper scope of a bill of particulars. *See United States v. Alex*, 791 F.Supp. 723, 727 (N.D.Ill.1992). The court finds that the indictment informs Hall of the statutory violations with which she is charged, the time frame for the acts charged, and her alleged role in the conspiracy. Thus, the indictment provides sufficient factual details to inform Hall adequately of the charges she faces and to allow her to prepare for trial. *See id.* (citing *United States v. McAnderson*, 914 F.2d 934, 946 (7th Cir.1990)).

Moreover, Hall has been able to take extensive discovery of the evidence against her and the other defendants. The government has represented that it has provided Hall with or given her access to the law enforcement reports prepared during the investigation that led to the return of the indictment; tapes containing recordings of all the conversations intercepted pursuant to the court-authorized wiretaps and all other recordings made during the course of the investigation; all Title III logs summarizing each intercepted conversation; and physical evidence obtained during the course of the investigation. In addition, the government has agreed to provide all Jencks Act material and a *Santiago* proffer. Furthermore, according to the government, Hall participated in a several-day preliminary hearing on the conspiracy charge in the criminal complaint, and cross-examined the government's witness for hours regarding the specific events and telephone calls detailed in the criminal complaint. Such extensive pre-trial discovery obviates the need for a bill of particulars in this case. *See Glecier,* 923 F.2d at 502; *Kendall,* 665 F.2d at 135; *United States v. Swano,* No. 91 CR 477–02–03, 1992 WL 137588, *8 (N.D.Ill. June 1, 1992).

 A bill of particulars will be denied when the indictment, combined with the discovery provided by the government, adequately informs the defendant of the charges. *See, e.g., Swano,* 1992 WL 137588, *8. This is such a case; the indictment against Hall and the discovery that has been made available to her clearly provide enough information to allow Hall to know with what she is charged and to prepare an adequate defense to the charge. The additional information that Hall seeks by way of a bill of particulars amounts to a request for details about the government's evidence against Hall. The government is not obligated to provide such evidentiary detail to Hall.

Accordingly, the court denies Hall's motion for a bill of particulars.

### 2. Mukaila Balogun

Balogun moves for a bill of particulars that would provide details about the allegation in the indictment that Balogun assisted co-defendant Jumoke Soneye by wire-transferring heroin proceeds, paying travel expenses, and interceding on Soneye's behalf. Specifically, Balogun wants the government to identify on what days he is alleged to have made wire transfers of proceeds; what courier's expenses he is alleged to have paid; and where the transactions occurred.

As the court found with respect to Balogun's co-defendant Hall, what Balogun seeks are evidentiary details about the government's case against him. The indictment informs Balogun of the allegations against him—assisting Soneye's drug business by laundering drug proceeds and funding the travel of drug couriers. While the allegation is general, it advises Balogun of what he is accused.

Furthermore, extensive discovery should have provided Balogun with all of the details about his alleged offense that he now seeks through a bill of particulars. The government has stated that Balogun has a copy of every intercepted call that he made; a draft transcript of all calls to be used at trial; summaries of those calls; a summary of his actions, including phone calls, in the criminal complaint and preliminary examination; and copies of all law enforcement reports regarding surveillance of himself and others, and his arrest and others' arrests that occurred in the charged conspiracy.

The government has represented that the dates and times of Balogun's actions are specifically referred to in the intercepted calls and their draft transcripts, as well as in Western Union wire transfer documents that were made available to Balogun. The government claims, and the court agrees, that the information sought by Balogun is readily available to him in the foregoing materials, and that all he need do is examine the tapes, transcripts, wire transfer documents, documents, and reports already provided to him.

 Because the indictment and extensive discovery made available to Balogun provide him with sufficient information to allow him to prepare for trial, the court denies Balogun's motion for a bill of particulars.

### 3. Adebayo Majekodunmi

Majekodunmi asks for very detailed information regarding the allegations against him in the indictment. For example, he wants the government to identify and describe each act or communication that relates to his participation in the importation and distribution conspiracies, and the locations and times of and people involved in the acts alleged in the indictment.

The court finds that Majekodunmi's information request goes far beyond simply seeking enough information to allow him to know the offense with which he is charged to enable him to prepare for trial. *See Kendall,* 665 F.2d at 134. Rather, it seeks very detailed information regarding the government's evidence against Majekodunmi.

The court finds the indictment sufficiently clear to allow Majekodunmi to know with what he is charged and to prepare his defense to the charges. Moreover, as the court has noted repeatedly above, the discovery in this case has been extensive. The government has given Majekodunmi's counsel access to the law enforcement reports that led to the return of the indictment; tape recordings of all intercepted conversations made during the course of the investigation; Title III logs summarizing each intercepted conversation; and physical evidence obtained during the course of the investigation. Further, Majekodunmi participated in a preliminary hearing on the conspiracy charge, and was able to cross-examine the government's witness regarding the specific events detailed in the criminal complaint. Finally, the government will provide a *Santiago* proffer, and will turn over to defense counsel all Jencks Act, *Brady,* and *Giglio* information.

■ Based on the indictment and discovery that has been made available to Majekodunmi, the court finds that he has sufficient information to know with what he is charged and to prepare an adequate defense to the charges. Thus, a bill of particulars is unnecessary.

Accordingly, the court denies Majekodunmi's motion for a bill of particulars.

### 4. Anthony Smith

Defendant Anthony Smith asks for very detailed information regarding the allegations against him in the indictment. For example, he wants the government to identify and describe the times and places where he allegedly engaged in all of the conduct alleged in Count One; the method or means by which he allegedly committed the offenses alleged in Count One; the names of any unindicted co-conspirators; when, where, and how he became a member of the conspiracy; and all overt acts done in furtherance of the conspiracy that are not set forth in the indictment but that the government intends to prove at trial.

Smith's request goes far beyond simply seeking enough information to allow him to know the offense with which he is charged to enable him to prepare for trial. *See Kendall,* 665 F.2d at 134. Rather, it seeks very specific information regarding the government's evidence against Smith.

The court finds the indictment sufficiently clear to allow Smith to know with what he is charged and to prepare his defense to the charges. While Smith was recently extradited to the United States from Thailand, speaks little English, and apparently is illiterate, he has competent counsel to represent him. Moreover, as the court has noted repeatedly above, the discovery in this case has been extensive. While Smith was just brought to the United States and Smith's counsel just recently became involved in this case, the court notes that it set a trial date in November because of those factors, gave Smith leave to file additional pre-trial motions, and otherwise has taken into account the unique circumstances affecting Smith's defense. All of the discovery that has been made available to other defendants and defense counsel has been or will be made available to Smith and his counsel, and the court has given Smith and his counsel more than enough time to evaluate the discovery and prepare a defense.

■ Based on the information that Smith either has or will have, the court finds that he will have sufficient information to know with what he is charged and to prepare an adequate defense to the charges. Thus,

based on the indictment and discovery that has been or will be made available to Smith, a bill of particulars is unnecessary.

Accordingly, the court denies Smith's motion for a bill of particulars.

### D. *Motions for order requiring government to file a written Santiago proffer, and/or for pre-trial hearing on admissibility of co-conspirator statements*

#### 1. Motions for written *Santiago* proffer

Defendants Olajumoke Hall, Tajudeen Aroworade, Folake Olukoga, Victoria Olabunmi Onimole, Adabayo Majekodunmi, Kafayat Adedolapo Windokun, and Anthony Smith move the court to order the government to submit, no later than between 45 and 60 days prior to trial, a written proffer of evidence that it deems sufficient to support the introduction of any co-conspirator statements, pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), and Federal Rules of Evidence 801(d)(2)(E) and 104(b).

The government responds that it already has represented to all defense counsel that it will file a written *Santiago* proffer 21 days prior to trial, making part of defendants' motions moot. The government contends that filing the proffer three weeks prior to trial is sufficient to satisfy the requirements of Federal Rule of Evidence 801(d)(2)(E).

▉ The court agrees with the government that a written *Santiago* proffer submitted three weeks prior to trial is sufficient to allow the court to determine conditionally the admissibility of co-conspirator statements. Accordingly, the court denies defendants' motion seeking a written *Santiago* proffer as moot.

#### 2. Motions for pre-trial hearing on admissibility of co-conspirator statements

Defendants Akintoye Sode, Tajudeen Aroworade, Adebayo Majekodunmi, and Kafayat Adedolapo Windokun ask the court to hold a hearing pursuant to Federal Rule of Evidence 104(a) to determine whether or not the statements of any alleged co-conspirators are admissible. As the court noted above, the

government has offered to submit a written *Santiago* proffer 21 days prior to trial. The government argues that a written proffer is sufficient and a hearing unnecessary to determine conditionally the admissibility of co-conspirators' statements.

The court agrees with the government. The Seventh Circuit has expressly approved of the use of written pre-trial proffers to allow the court to determine the admissibility of co-conspirator statements. *See United States v. Andrus*, 775 F.2d 825, 836–37 (7th Cir.1985); *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir.1991); *United States v. Doerr*, 886 F.2d 944, 967 (7th Cir.1989); *United States v. Boucher*, 796 F.2d 972, 974 (7th Cir.1986). In fact, the Seventh Circuit has openly discouraged the use of pre-trial *Santiago* hearings as inefficient and potentially duplicative. *See id.* In short, the written *Santiago* proffer is an acceptable, and preferable, means of allowing the court to determine the admissibility of co-conspirator statements.

Accordingly, the court denies defendants' motions for a pre-trial *Santiago* hearing.

#### 3. Requests to bar reference to co-conspirator statements

Olukoga and Onimole also ask the court to bar the government and its witnesses from making any direct or indirect reference to co-conspirator statements until the court has made an admissibility determination. To the extent that the court will not allow the government and its witnesses to introduce or refer to co-conspirator statements before the court has made a conditional determination as to the admissibility of such statements, Olukoga's and Onimole's requests are granted.

### E. *Motion for disclosure of favorable evidence*

Defendants Olajumoke Hall, Akintoye Sode, Tajudeen Aroworade, Folake Olukoga, Victoria Olabunmi Onimole, Mornkat Adola Asanike, Mukaila Balogun, and Adebayo Majekodunmi want the court to require the government to disclose prior to trial any evidence or information known to it or in its possession, custody, or control, or of which it

comes to know, that is favorable to defendants and material to the issues of their guilt, innocence, or sentencing, or that bears upon the credibility of a government witness. In other words, defendants ask for exculpatory information under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and impeaching evidence under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[3] Moreover, defendants want this information immediately, or at least a long time before trial.

In response, the government has represented that it has advised defense counsel that it intends to turn over any *Brady* material in its possession, has already done so, and will continue to do so. It has represented that it will promptly disclose to defendants any evidence that it may discover that conceivably could be exculpatory.

■ The government also has represented that it has told defense counsel that it will turn over all *Giglio* evidence with its Jencks Act materials no later than three weeks before trial. The court notes that the government is not even required to turn over *Giglio* or *Brady* evidence before trial. *See Kompare v. Stein,* 801 F.2d 883, 890 (7th Cir. 1986); *United States v. Sweeney,* 688 F.2d 1131, 1141 (7th Cir.1982); *United States v. Lobue,* 751 F.Supp. 748, 758–59 (N.D.Ill. 1990). Thus, the court finds the government's offer to disclose *Giglio* evidence at least three weeks in advance of trial sufficiently generous.

Accordingly, the court denies defendants' motions for disclosure of favorable evidence as moot.

### F. Motion for an order requiring the government to give notice of its intention to use other crimes, wrongs, or acts evidence

Defendants Olajumoke Hall, Tajudeen Aroworade, Folake Olukoga, Victoria Olabunmi Onimole, Mornkat Adola Asanike, Mukaila Balogun, Adebayo Majekodunmi, Jumoke Soneye, Kafayat Adedolapo Windokun, and Anthony Smith ask the court to order the government to provide them with a description of any evidence that it intends to use at trial that constitutes evidence of "other crimes, wrongs, or acts" of defendants or their alleged co-conspirators, pursuant to Federal Rule of Evidence 404(b), and "specific instances of conduct" of defendants, pursuant to Federal Rule of Evidence 608(b). Defendants want the information to be disclosed no later than between 45 and 60 days prior to trial.

The government responds that it does not intend to offer "other acts" evidence pursuant to Rule 404(b). However, it has represented that if it decides to offer such evidence, it will provide prompt notice to defendants. Based on the government's representations, the court denies defendants' motion as moot.

■ Moreover, "[b]y its terms, Rule 608(b) evidence may not be used by the government in its case-in-chief and therefore such evidence is not discoverable under Rule 12 of the Federal Rules of Criminal Procedure." *United States v. Sims,* 808 F.Supp. 607, 611 (N.D.Ill.1992). Accordingly, the court denies defendants' motion to produce Rule 608(b) evidence.

### G. Motions for disclosure of grand jury minutes

Defendants Victoria Olabunmi Onimole and Folake Olukoga move for an order requiring the government to disclose minutes of grand jury proceedings. Specifically, they seek the testimony of witnesses appearing before the grand jury; transcripts of all statements made to the grand jury by prosecutors; the record of votes cast by members of the grand jury in connection with their and their co-defendants' indictment; and all documents submitted to the grand jury.

Defendants make their motions pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i). Rule 6(e)(2) imposes a general rule of secrecy on grand jury proceedings.

---

**3.** The government must disclose any evidence favorable to a defendant if the evidence is material to either guilt or punishment. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. The *Brady* obligation extends to evidence that tends to impeach a government witness's credibility, as long as the evidence is material to the outcome of the trial. *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766.

However, Rule 6(e)(3)(C)(i) and (ii) provides that grand jury proceedings otherwise kept secret may be disclosed when so directed by the court in connection with a judicial proceeding, or when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters that occurred before the grand jury.

 In order to overcome Rule 6(e)(2)'s secrecy rule as well as "the long-established policy that maintains the secrecy of grand jury proceedings in the federal courts," the defendant must establish a "particularized need" for the grand jury material. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958). Under this "particularized need" standard, the defendant must show that the grand jury material is

> needed to avoid possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed.... [Moreover], in considering the effects of disclosure of grand jury proceedings, the courts must consider not only immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979).

Defendants proffer three reasons for their requests for disclosure of grand jury proceedings. They assert that disclosure is necessary to determine whether the requisite number of grand jurors concurred in the findings of the true bill under Rule 6(e); to determine whether they have grounds to move to dismiss the indictment for reasons of illegal and/or improper matters occurring before the grand jury; and to prepare their defenses properly.

 The court finds that defendants' request appears to be a general fishing expedition into the grand jury proceedings. Defendants have neither shown nor attempted to show that the requested disclosures are necessary to avoid possible injustice, or that their need for disclosure is greater than the need for continued secrecy. Furthermore, they have not shown that grounds may exist for a motion to dismiss the indictment because of matters that occurred before the grand jury.

Moreover, rather than structuring their requests to cover only the material purportedly needed, they have structured their requests to cover all material reflecting anything that occurred before the grand jury in relation to their and their co-defendants' indictment. Defendants' extraordinarily broad requests buttress the court's conclusion that they simply are seeking general discovery of the proceedings before the grand jury, rather than seeking particular information of which they have a need to avoid injustice or to allow them to move to dismiss the indictment. *See United States v. Horak*, 633 F.Supp. 190, 195 (N.D.Ill.1986) ("broad generalized desires for access to grand jury materials ... do not constitute 'particularized need' "), *aff'd in part and vacated in part on other grounds*, 833 F.2d 1235 (7th Cir.1987).

The court finds that if it were to allow such broad requests, the result would be to replace the general rule of secrecy of grand jury proceedings with a general rule of open discovery of grand jury proceedings.

Defendants have not established that they have a particularized need for the grand jury materials that they seek, and therefore have not overcome the presumption of secrecy that applies to grand jury proceedings. Accordingly, the court denies their motions for disclosure of grand jury proceedings pursuant to Federal Rule of Criminal Procedure 6(e). However, the court notes that if the government is obligated for some other reason, such as pursuant to *Brady or Giglio*, to disclose information covered by defendants' motions, the court's denial of the motions does not extinguish that duty.

**H.** *Motions for production of witness list*

Defendants Folake Olukoga, Victoria Olabunmi Onimole, and Adebayo Majekodunmi ask the court to order the government to provide them with a list of witnesses the government intends to present at trial. Olukoga and Onimole contend that a witness list

will promote judicial economy, enable them to prepare more efficiently for trial, streamline the trial, and ensure that they are provided with effective assistance of counsel. Majekodunmi contends that disclosure of the witnesses prior to trial will enable his counsel to interview the witnesses prior to trial; complete investigation of his case; stipulate to facts and eliminate unnecessary witnesses prior to trial; raise questions of admissibility of evidence prior to trial; and apply for writs of habeas corpus ad testificandum for witnesses necessary to the defense. Majekodunmi contends that production of the witness list is necessary for his counsel to provide effective assistance to him.

 The government is not required to provide a defendant with a list of prospective government witnesses. *United States v. Braxton,* 877 F.2d 556, 560 (7th Cir.1989); *United States v. Napue,* 834 F.2d 1311, 1317 (7th Cir.1987); *United States v. Bouye,* 688 F.2d 471, 473–74 (7th Cir.1982). As the court in *Bouye* noted,

> "[i]t is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses and improper contacts directed at influencing their testimony were deemed paramount concerns in the formulation of this policy."

*Bouye,* 688 F.2d at 474 (quoting H.R. REP. No. 94-414, 94th Cong., 1st Sess. 123, *reprinted in* 1975 U.S.C.C.A.N. 674, 713, 716).

Nonetheless, the court may order the government to provide defense counsel with a witness list in advance of trial. *See United States v. Jackson,* 508 F.2d 1001, 1006–07 (7th Cir.1975) (upholding a district court order for the government to produce a witness list); *Napue,* 834 F.2d at 1318 (noting that district court has authority to require the government to provide the defendant with witness list).

Defendants' primary argument appears to be that their counsel cannot prepare for trial efficiently and effectively without the government's witness list. However, as the government notes, when the government produces Jencks Act and *Giglio* and *Brady* materials, defendants' counsel will know the identities of most, if not all, of the government's witnesses. The court finds that these materials, in conjunction with the indictment, will provide defendants' counsel with sufficient information to enable counsel to prepare an adequate defense of defendants.

Accordingly, the court denies defendants' motions for pre-trial production of a list of the government's witnesses.

### I. Motion for immediate production of all Jencks Act material

Defendant Adebayo Majekodunmi moves for an order directing the government to provide to him all Jencks Act[4] materials "well in advance of" trial. The government has agreed to provide the information within three weeks prior to trial. The court considers the government's offer quite reasonable, particularly since it exceeds the requirements of the Jencks Act. *See Alex,* 791 F.Supp. at 726 (noting that the Jencks Act provides that the government need not produce witness statements until the witness has testified on direct examination); *United States v. Messino,* 855 F.Supp. 955, 968 (N.D.Ill.1994); *United States v. Sims,* 808 F.Supp. 607, 616 (N.D.Ill.1992) (both nothing that courts have no authority to order pre-trial disclosure of material embraced by the Jencks Act).

Accordingly, Majekodunmi's motion for production of all Jencks Act material is denied as moot.

### J. Motion to compel immediate disclosure of existence and substance of promises of immunity, leniency or preferential treatment

Defendant Adebayo Majekodunmi asks the court to require the government to disclose

---

4. The Jencks Act, 18 U.S.C. § 3500, provides:
 In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case. 18 U.S.C. § 3500(a).

the existence and substance of agreements between the government and any prosecution witnesses for immunity, leniency, or any other kind of preferential treatment. As the government has noted, this motion is the same as a request for impeaching, or *Giglio*, evidence about government witnesses, and therefore is duplicative of Majekodunmi's motion for immediate disclosure of impeaching information and production of favorable evidence.

Accordingly, the court denies the motion as moot, based on the government's implied representation that the evidence sought by the motion will be produced by the government in accordance with *Giglio*.

### K. *Motion to strike prejudicial surplusage from indictment*

Defendant Adebayo Majekodunmi moves the court to strike what he calls prejudicial surplusage from the indictment.

Federal Rule of Criminal Procedure 7(d) allows the court to strike from the indictment terms that are irrelevant to the crime charged and prejudice the defendant. FED. R. CRIM. P. 7(d); *United States v. Brighton Building & Maintenance Co.*, 435 F.Supp. 222, 230 (N.D.Ill.1977), *aff'd*, 598 F.2d 1101 (7th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52, (1979).

Majekodunmi contends that the indictment contains numerous words and phrases that "serve[ ] no useful purpose and allow[ ] . . . the inference that the defendant is accused of crimes not charged in the indictment," *Brighton*, 435 F.Supp. at 230 (citations omitted), and therefore are subject to a motion to strike under Rule 7(d). Specifically, Majekodunmi asks the court to strike the words "various locations," "at times," "various points," "among other places," "elsewhere," "and others," "other heroin dealers," "other members," and "multiple" from designated paragraphs of Count One of the indictment.

The government counters that these terms are not surplusage and describe the breadth of the charged conspiracy without pointing out each date, time, place, or person involved in the conspiracy. The government contends that to strike the general language referring to other times, dates, places, or persons would vitiate Federal Rule of Criminal Procedure 7(c)(1) by requiring the indictment to include every fact rather than contain "a plain, concise, and definite written statement of essential facts." FED. R. CRIM. P. 7(c)(1). Moreover, argues the government, Majekodunmi is not prejudiced by those terms because at trial, the times, dates, places, and persons to which the phrases refer will be part of the case against Majekodunmi and will be presented to the jury.

■ The court agrees with the government that these terms do not appear to be surplusage, but rather are general terms used to set forth the scope of the conspiracies of which Majekodunmi allegedly was a part, without giving specific evidentiary facts regarding the conspiracies. The court also finds that the terms do not prejudice Majekodunmi, particularly since the government represents that it will introduce evidence of the times, dates, places, and persons to which the indictment refers.

Accordingly, the court denies Majekodunmi's motion to strike prejudicial surplusage from the indictment.

### L. *Motion for discovery requests under the federal sentencing guidelines*

Defendant Adebayo Majekodunmi asks the court to order the government to disclose information under the federal sentencing guidelines so that Majekodunmi is aware of the likely sentencing range if he is convicted. Majekodunmi seeks evidence regarding all of the different factors that are involved in determining his sentence, such as acts or omissions of his co-defendants or any unindicted co-conspirators for which Majekodunmi would be held accountable; any acts relating to use of a firearm; any victim-related adjustments; any departure motion; or any other information concerning the background, character, and conduct of Majekodunmi.

■ In essence, what Majekodunmi now seeks is a pre-trial preparation of the presentence investigation report, or the government's version of Majekodunmi's offense. As the government noted, there simply is no

authority for the court to order the government to produce such information. If, in the course of plea negotiations or for any other reason, the government wishes to give Majekodunmi an idea of the potential sentence he faces if convicted, then it has the prerogative to do so. However, the court fails to see, and Majekodunmi has not proffered, a basis for requiring the government to turn over sentencing information as part of pre-trial discovery.

Accordingly, Majekodunmi's motion for discovery requests under the federal sentencing guidelines is denied.

### M. *Motion to preserve agents' notes*

Defendant Mornkat Adola Asanike asks the court to order the government to preserve and produce the original notes of federal investigative agents made in the course of interviewing prospective witnesses in this case. Further, Asanike seeks not only the notes of agents investigating her, but also of agents investigating her co-defendants and other known co-conspirators. Asanike argues that the production of the agents' notes is necessary to ensure full compliance with the Jencks Act, 18 U.S.C. § 3500, and the requirements of *Brady*.

The government responds that, as it stated to Asanike in its Local Rule 2.04 letter, it has no objection to doing as Asanike asks, and therefore that her motion should be denied as moot. The court agrees. Asanike's motion is denied as moot, based on the government's representation that it will preserve and produce agents' notes of interviews with government witnesses.

### N. *Motion for leave to file additional pre-trial motions*

Defendant Mornkat Adola Asanike moves for leave to file additional pretrial motions based upon the results of pre-trial discovery within a reasonable time after she ascertains grounds for such motions.

Federal Rule of Criminal Procedure 12(f) provides that "[f]ailure by a party ... to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), ... shall constitute waiver

thereof, but the court for cause shown may grant relief from waiver." FED. R. CRIM. P. 12(f). In the event that additional motions become necessary and Asanike makes the requisite showing under Rule 12(f), the court will entertain such a motion.

Until that event arises, however, Asanike's motion to file additional pre-trial motions is premature, and therefore is denied.

### O. *Motion for discovery of certain items in government's possession*

Defendant Olajumoke Hall moves for an order requiring the government to disclose (1) the identity and qualifications of any expert the government intends to call at trial, a summary of the expert's testimony, the expert's opinions, and the bases and reasons for those opinions, no later than 45 days before trial; (2) each and every item of evidence the government intends to introduce in its case-in-chief; and (3) the government's written *Santiago* proffer and Rule 404(b) evidence earlier than three weeks prior to trial.

#### 1. Expert witnesses

The government acknowledges its obligation to provide expert witness discovery under Federal Rule of Criminal Procedure 16(a)(1)(E), and states that it will honor its obligation prior to trial. However, it objects to Hall's request that it provide expert discovery no later than 45 days before trial. It contends that Rule 16 does not specify such a deadline, and that it should not be compelled to disclose its experts and their expected testimony by some arbitrary deadline, especially since the government will not make a final determination on its witnesses until it begins trial preparation. The government notes that a trial date has not yet been set.

The court agrees in substance with the government's argument. However, the court also finds that expert discovery should be turned over to Hall with sufficient time to enable Hall to prepare for trial. Based on the government's offers to turn over other discovery no later than three weeks prior to trial, the court finds that requiring the government to disclose its experts and their expected testimony no later than three weeks prior to trial is reasonable.

Accordingly, Hall's motion for expert discovery is denied as moot, based on the government's representation that it will honor its obligation to provide expert witness discovery.

### 2. Evidence in case-in-chief

Hall wants the government to disclose all of the evidence it intends to introduce against Hall so that she may prepare appropriate motions to suppress. The government contends that Hall's request that the government immediately disclose each and every item it intends to introduce in its case-in-chief should be denied as moot, because the government is complying with its discovery obligations and turning over every piece of evidence that it obtains. The government also contends that Hall's request exceeds what the Federal Rules of Criminal Procedure and the Constitution require. The court agrees.

Federal Rule of Criminal Procedure 12(d)(2) provides:

At the arraignment or as soon thereafter as is practicable the defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3) of this rule, request notice of the government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16.

FED. R. CRIM. P. 12(d)(2). According to the government, it has disclosed to Hall all evidence it has obtained. In addition, in its response to Hall's motion, the government sets forth the evidence that it expects to introduce against Hall. The combination of the government's description of the evidence it intends to use against Hall and the extensive discovery provided by the government are enough to allow Hall to prepare and file motions to suppress.

The government states that it may introduce additional evidence in the form of testimony by cooperating individuals, but that it has not yet decided on its witnesses and at this point in time is under no obligation to do so or to produce their statements. The government is correct that it is not required to

produce a list of its prospective witnesses, *see, e.g., Braxton,* 877 F.2d at 560, or every statement by them. *See* 18 U.S.C. § 3500 (governing the production of government witness statements). Moreover, Hall "is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Kendall,* 665 F.2d at 135.

In sum, the court finds that Hall already possesses sufficient information to enable her to file appropriate motions to suppress, and therefore denies her motion for discovery of all evidence the government intends to introduce against her at trial.

### 3. *Santiago* proffer and Rule 404(b) evidence

Hall seeks earlier disclosure of the government's written *Santiago* proffer and Federal Rule of Evidence 404(b) material than the three weeks before trial that the government has offered. The court already has addressed both requests. *See* sections D.1. and F. above. For the reasons set forth above, the court denies Hall's motion.

### P. Motions to dismiss indictment for a violation of the Speedy Trial Act

Defendants Olajumoke Hall, Folake Olukoga, Mukaila Balogun, and Adebayo Majekodunmi move to dismiss the indictment against them because of violations of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and defendants' Sixth Amendment right to a speedy trial.

The Speedy Trial Act requires the government to file an information or indictment charging the individual arrested with the commission of an offense "within thirty days from the date on which such individual was arrested or served with a summons in connection with the charges." 18 U.S.C. § 3161(b). If the government fails to return an information or indictment within the required time limit, the charges against the individual "shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

However, not all delays violate the Speedy Trial Act. The Act allows "exclu-

sions" of time in computing the deadlines, and time may be excluded for numerous reasons. *See* 18 U.S.C. § 3161(h). "The decision to grant a continuance under the Speedy Trial Act is well within the discretion of the trial court." *United States v. Tanner,* 941 F.2d 574, 579 (7th Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992).

Defendants were arrested in October 1996, but the indictment was not returned until March 13, 1997. Thus, defendants argue that much longer than 30 days passed between the time of their arrests and the date the indictment was returned. Moreover, they contend that although Chief Judge Aspen granted the government two extensions of time for the return of the indictment, the government never disclosed the reasons for seeking the exclusions of time, and the reasons for the exclusions remain under seal. Thus, argue defendants, the government has provided no evidence that the exclusions of time granted by Chief Judge Aspen were properly entered, covered every period from the time of defendants' arrests to the date of the indictment, and were justified.

 Defendants' arguments are irrelevant. Chief Judge Aspen granted the government's motions to exclude time. Based on Chief Judge Aspen's orders, the government had until March 13, 1997, to file the indictment against defendants. The government filed the indictment on that date. Therefore, the government timely returned the indictment under the Speedy Trial Act. This court does not sit as an appellate court, with authority to review Chief Judge Aspen's orders. As the government noted, if defendants believe the orders to exclude time were improperly granted, that is a matter they can appeal following trial of this case.

 Defendants also contend that their Sixth Amendment right to a speedy trial was denied. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth the factors used to determine when post-arrest delay is excessive and violative of the Constitution. Under *Barker,* this court must consider (1) the length of the delay; (2) the government's reasons and motive for delay; (3) whether the defendant asserted his right to a speedy trial; and (4) the prejudice suffered by the defendant. *Barker,* 407 U.S. at 530–32, 92 S.Ct. at 2192–93.

Based on these factors, defendants' speedy trial rights were not violated. First, no more than five months passed between defendants' arrest and indictment; this was not an excessive delay. *See, e.g., United States v. Jackson,* 508 F.2d 1001, 1005 (7th Cir.1975) (seventeen-month delay not excessive nor "extraordinary," and Seventh Circuit has "tolerated longer periods of delay in speedy trial cases").

Second, the government has set forth in detail the complexity of this case and the lengths to which it went to return an indictment. In short, the government's investigation involved more than 30 targets, some from as far away as Thailand and Pakistan, who allegedly were engaged in an international conspiracy to import heroin into the United States from Thailand, distribute the heroin in the Chicago area, and launder the proceeds through overseas wire transfers. The main indictment eventually was returned against 24 of these targets, some of whom remain fugitives. Understandably, the government's investigation of this intricate and extensive conspiracy was time- and labor-intensive.

While the government acknowledges that defendants could argue that the government should have completed its investigation prior to arresting defendants, the government proffers legitimate reasons for not waiting. It states that it had to take into account the danger of allowing defendants to continue distributing heroin on the street and the risk of flight of defendants, who were wary of law enforcement surveillance, frequently travelled outside of the United States, and changed addresses and phone numbers. The court agrees that the government's reasons for taking several months to complete their investigation before filing the indictment were legitimate and well-founded reasons.

Third, defendants asserted their rights to a speedy trial by generally objecting to the extensions of time granted by Chief Judge Aspen.

Fourth, defendants have not shown that they were prejudiced in any way by the extensions of time to file the indictment. They simply make general and conclusory allegations of prejudice, but their conclusory allegations are unsupported by any specific showing of prejudice. For example, defendants' motions are devoid of any specific allegations that witnesses who could have exonerated them are now unavailable, or that certain evidence was destroyed during the period between arrest and indictment, or that the delay prevented defendants from otherwise preparing a defense. In the absence of such specific allegations of prejudice, the court finds that defendants suffered no prejudice by the delay between their arrests and indictment.

Neither the Speedy Trial Act nor defendants' Sixth Amendment right to a speedy trial was violated by the passage of time between defendants' arrest and eventual indictment. Accordingly, defendants' motions to dismiss for a violation of the Speedy Trial Act are denied.

### Q. *Motion for discovery*

Defendant Akintoye Sode moves for an order requiring the government to produce or disclose numerous items of discovery.

#### 1. Specific statements and defendant's statements

Sode seeks all written or recorded statements, including Sode's grand jury testimony, that are relevant to the acts charged in the indictment, and any oral statements that the government intends to introduce at trial. Sode also asks the court to order the government to produce all statements made by Sode other than grand jury testimony; all statements by Sode made to third parties and released by the third parties to government agents; and statements made by third parties that could be attributed to Sode.

The government states that Sode did not give grand jury or other formal statements to the government. The government states that it acknowledges its obligations to provide relevant statements of defendants under Federal Rule of Criminal Procedure 16(a)(1)(A), and has complied with that rule.

It states that it has produced to Sode the statements made by Sode over telephones that were monitored pursuant to court-authorized wiretaps.

Based on the government's representations, this discovery request is denied as moot.

#### 2. Other crimes, wrongs, or acts

Sode wants the government to disclose all similar crimes, wrongs, or acts of Sode on which the government intends to rely at trial to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The court already has addressed various defendants' requests for Rule 404(b) evidence above. *See* section F. above. As explained above, the government acknowledges it obligation under Federal Rule of Evidence 404(b) to produce such evidence, and will do so if it intends to introduce such evidence at trial. Therefore, Sode's request for Rule 404(b) evidence is denied as moot. Furthermore, to the extent that Sode seeks specific information that goes beyond the scope of Rule 404(b), the court denies his request.

#### 3. Specific instances of conduct

Sode wants the government to disclose specific instances of conduct of Sode on which the government will rely at trial for purposes of impeachment of Sode, if he should testify at trial. As the court noted in section F. above, impeaching evidence of specific instances of conduct under Federal Rule of Evidence 608(b) cannot be used by the government in its case-in-chief and therefore is not discoverable. *See Sims*, 808 F.Supp. at 611. Accordingly, the court denies Sode's request based on specific instances of conduct.

#### 4. Opinion testimony

Sode seeks disclosure of any opinion testimony on which the government will rely at trial, and the facts or data on which the experts will offer their opinions. The government acknowledges its obligations under Federal Rule of Criminal Procedure 16(a)(1)(E) concerning expert witness disclo-

sure. It states that it is providing to Sode reports containing the results of handwriting and fingerprint analysis, and if it elects to rely on handwriting or fingerprint expert testimony or any other kind of expert testimony at trial, it will comply with Rule 16(a)(1)(E)'s disclosure requirements. Accordingly, the court denies as moot Sode's request for opinion testimony.

### 5. Statements of unavailable hearsay declarants

Sode seeks disclosure of statements that the government will introduce at trial where the declarant is "unavailable as a witness" under Federal Rule of Evidence 804. The government contends that pretrial disclosure of such statements is not required, and therefore that the request exceeds the government's discovery obligations under Federal Rule of Criminal Procedure 16 or any other discovery provision. The court agrees. Because Sode's request for disclosure of statements of unavailable hearsay declarants goes beyond the government's discovery obligations under Rule 16, the court denies the request.

### 6. Other exceptions to hearsay rule

Sode asks the court to order the government to disclose whether it will attempt to introduce evidence under Federal Rule of Evidence 803(24) or 804(5). The government acknowledges its obligations to provide sufficient notice of its intention to offer any evidence under Rules 803(24) and 804(5) and states that it will comply with the notice requirements contained in those rules if it elects to introduce evidence under those rules at trial.

Based on the government's representations, Sode's motion is denied as moot.

### 7. Documents and tangible evidence

Sode asks the court to order the government to produce any and all documents and tangible objects discoverable under Federal Rule of Criminal Procedure 16 that the government has or may obtain prior to trial and has not yet disclosed to the defense. The government acknowledges its discovery obligations as to all documents and tangible ob-

jects required to be disclosed under Federal Rule of Criminal Procedure 16(a)(1)(C). The government states that it has disclosed such evidence, and if it obtains additional evidence that must be disclosed under Rule 16(a)(1)(C), it will disclose such evidence.

Based on the government's representations, Sode's request for discovery of documents and tangible objects is denied as moot.

### 8. Test reports and results of scientific examination

Sode asks to inspect and copy any results or reports of scientific tests, experiments, or examinations that are in the possession, custody, or control of the government. Again, the government acknowledges its obligation to turn over reports of examinations and tests described in Federal Rule of Criminal Procedure 16(a)(1)(D). It states that it is turning over reports pertaining to handwriting and fingerprint analysis, and will continue to comply with Rule 16(a)(1)(D) with respect to any other reports of examinations and tests that come into the government's possession.

Based on the government's representations, Sode's request for reports of examinations and tests is denied as moot.

### 9. Reports made by state and local authorities

Sode moves for an order requiring the government to furnish all documents in their possession, custody, or control that were prepared during the course of the investigation by state or local authorities in the United States or any foreign country. The government objects to this request because such reports are not covered by Federal Rule of Criminal Procedure 16, the Jencks Act, 18 U.S.C. § 3500, or any other discovery provision. However, the government offers that if it obtains such reports pertaining to evidence that it intends to offer at trial, it will provide such reports to Sode.

Based on the government's representations, the court denies Sode's request for reports by local and state authorities as moot.

## 10. Co-conspirator statements

Sode asks the court to order the government to provide to him any recorded, transcribed, or summarized statements of co-conspirators or any documents reflecting the substance of such statements. The government states that the wiretap tapes, transcripts, and summary logs that it already has turned over to Sode contain relevant co-conspirator statements that may be used as evidence at trial. The government also states that it has provided Sode with copies of statements of various cooperating individuals who may testify at trial.

Federal Rule of Criminal Procedure 16 governs discovery in a criminal case. Rule 16(a)(2) states that the rule does not "authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500." FED. R. CRIM. P. 16(a)(2). The Jencks Act, 18 U.S.C. § 3500, provides that government witness or prospective witness statements are not discoverable until after the witness has testified on direct examination. 18 U.S.C. § 3500(a).

■ Because the Jencks Act does not allow the court to order the disclosure of the statements of prospective government witnesses prior to trial, the court cannot order the government to produce to Sode statements of his co-conspirators who will testify at trial. *See United States v. Feinberg,* 502 F.2d 1180, 1181–83 (7th Cir.1974). However, the court "may, in the exercise of its sound discretion, require the government to produce statements of co-defendants [or co-conspirators] who will not be government witnesses at trial." *United States v. Zarattini,* 552 F.2d 753, 757–58 (7th Cir.) (citing *United States v. McMillen,* 489 F.2d 229, 231 (7th Cir.1972), *cert. denied sub nom. Siegel v. McMillen,* 410 U.S. 955, 93 S.Ct. 1420, 35 L.Ed.2d 687 (1973)), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977).

Accordingly, Sode's motion seeking production of statements of his co-conspirators is denied to the extent that it seeks statements of government witnesses, but is granted to the extent that it seeks statements of non-witnesses. The government is ordered to produce any statements of Sode's non-witness co-conspirators that it has not yet produced at the time it produces its Jencks Act materials, which the government has represented will be no later than three weeks before trial.

## 11. List of witnesses

Sode wants the government to produce, prior to trial, a list of its prospective witnesses. The government is not required to do so. *Braxton,* 877 F.2d at 560; *Sims,* 808 F.Supp. at 616 (both holding that the government is not required to provide a defendant with a list of prospective witnesses). Accordingly, the court denies Sode's request for a list of the government's prospective witnesses.

## 12. Electronic surveillance

Sode moves for an order requiring the government to disclose the existence of any electronic or mechanical surveillance of him. The government states that it already has provided Sode with all discovery pertaining to the wiretaps and pen registers used in this case, including the wiretap and pen register applications, tapes of the intercepted calls, and draft transcripts of the tapes.

Based on the government's representations, the court denies Sode's request for discovery of electronic surveillance as moot.

## 13. All materials prior to trial

Finally, Sode asks the court to use its supervisory power over discovery by recommending that the government produce all the discovery requested above as well as statements of its witnesses in its case-in-chief no later than one month prior to trial. The court declines to do so. The government has stated that it has complied with its discovery obligations to date, and if it obtains any new evidence, it will disclose it in accord with the rules of discovery.

The court also notes that the government has offered to produce certain materials, such as Jencks Act materials and the *Santiago* proffer, no later than three weeks prior to trial. The court finds that three weeks prior to trial is sufficient.

Accordingly, the court denies Sode's request that the court recommend that the government produce all discovery no later than one month prior to trial.

### R. Motions for production of co-defendants' or co-conspirators' statements and cooperation agreements

Defendants Victoria Onimole, Folake Olukoga, Mornkat Adola Asanike, and Jumoke Soneye move for an order requiring the government to produce statements of co-defendants and co-conspirators. Defendants Onimole and Olukoga also want production of any cooperation agreements between the government and any co-conspirators or co-defendants. The government objects to the requests as beyond the scope of the government's discovery obligations.

The same reasoning that the court applied in deciding Akintoye Sode's request for production of statements of co-conspirators, *see* section Q. 10. above, applies equally here. Accordingly, as with Sode, the court denies defendants' motions for production of co-defendants' or co-conspirators' statements to the extent that they seek statements of government witnesses, but grants the motions to the extent that they seek statements of non-witnesses. The government is ordered to produce any statements of defendants' non-witness co-conspirators or co-defendants that it has not yet produced at the time it produces its Jencks Act materials, which the government has represented will be no later than three weeks before trial.

In addition, to the extent that cooperation agreements of testifying witnesses constitute impeaching materials that must be produced under *Giglio*, the court grants defendants' requests for such cooperation agreements, but denies as irrelevant defendants' request for cooperation agreements of non-witnesses.

### S. Motion for discovery of reports of expert witnesses

Defendant Jumoke Soneye asks the court to order the government to identify any expert witnesses the government intends to call at trial, and to produce copies of any notes, summaries, reports, or records relied on by any expert in forming his opinion. Soneye wants this information at least 30 days prior to trial.

The government responds that it already has turned over reports of handwriting and fingerprint analysis, and has not yet determined whether it will offer any additional expert testimony. However, the government states that it is aware of its obligations under Federal Rule of Criminal Procedure 16(a)(1)(E), and if it elects to rely on any expert testimony at trial, it will comply with the disclosure requirements of Rule 16.

Based on the government's representations, the court denies Soneye's motion as moot.

### T. Motions for disclosure of information regarding informants

Defendants Jumoke Soneye, Odunyemi Awolesu, Adebayo Majekodunmi, and Anthony Smith move the court to order the government to disclose information about any informants involved in this case. Soneye wants the government to disclose, at least 30 days prior to trial, any and all promises, inducements, or agreements made to any confidential informant in exchange for his or her cooperation. Awolesu and Smith want the government to disclose detailed and extensive information regarding any informants, such as their identity; their criminal background; and promises, inducement, and/or payments made to informants in exchange for their cooperation in this case or any other case. Majekodunmi wants the government to advise him if the government is using informants and will call them at trial; reveal to him whether the informants are his co-defendants in this case; and disclose to him, prior to trial, any representations, promises, or inducements made to confidential informants in exchange for their cooperation in this case, as well as the criminal record of any informant. The government objects to the requests, arguing that they go beyond the scope of the government's discovery obligations.

In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court established a balancing test for revealing the identity of confidential

informants. The test requires the court to consider both the informer's privilege and the defendant's interest in advancing her case. *Sims,* 808 F.Supp. at 615. The purpose of the informer's privilege " 'is the furtherance and protection of the public interest in effective law enforcement.' " *Sims,* 808 F.Supp. at 615 (quoting *Dole v. Local 1942, IBEW, AFL–CIO,* 870 F.2d 368, 372 (7th Cir.1989)). The party opposing the privilege bears the burden of demonstrating that " 'the identification of the informant . . . is essential to a balanced measure of the issues and the fair administration of justice.' " *Sims,* 808 F.Supp. at 615–16 (quoting *Dole,* 870 F.2d at 372). " 'The privilege will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful.' " *Sims,* 808 F.Supp. at 616 (quoting *Dole,* 870 F.2d at 373).

Defendants have failed to provide any particularized reasons to overcome the qualified informer's privilege. In fact, Majekodunmi gives no reason, and Soneye, Awolesu, and Smith give only a vague and general reason, why they need to know the identity of any informants. Soneye, Awolesu, and Smith merely claim that disclosure of the identity of any informants, their background information, and the contents of their communications is necessary to prepare an adequate defense of defendants. Awolesu and Smith also claim that any informant is a material witness whom they are entitled to question and call in their defense if they so desire.

■ It appears to the court that defendants are attempting to conduct a " 'fishing expedition' " or engaging in " 'bare speculation that the information may possibly prove useful.' " *Sims,* 808 F.Supp. at 616 (quoting *Dole,* 870 F.2d at 373). Because defendants have not shown that they have a need for the information regarding informers that is strong enough to overcome the informer's privilege, the court denies their motion seeking information regarding government informers.

However, the court notes that the government remains obligated to disclose the identity and statements of informers whom it intends to call as witnesses at trial, pursuant to the Jencks Act, and favorable and impeaching material, pursuant to *Brady and Giglio,* respectively. Thus, to the extent that any of the informant information sought by defendants falls under the Jencks Act, *Brady,* or *Giglio,* the government must produce such information to defendants.

**U. Motion for disclosure of electronic or other surveillance**

Defendant Adebayo Majekodunmi moves the court to require the government to disclose any electronic or other surveillance presently known or that may come to be known to the government, including surveillance conducted by any federal, state, or local agency.

In response, the government contends that Majekodunmi's request is moot. The government represents that it already has provided Majekodunmi with all discovery pertaining to the wiretaps and pen registers used in the case, and has turned over surveillance logs and reports pertaining to surveillance of the boutique where criminal activity allegedly occurred during the investigation.

Based on the government's representations, the court agrees that Majekodunmi's motion is moot, and therefore denies the motion for disclosure of surveillance.

**V. Motion to dismiss**

Defendant Adebayo Majekodunmi moves to dismiss the indictment against him on three grounds: that Chief Judge Aspen wrongly refused to hear and Magistrate Judge Ashman wrongly denied Majekodunmi's motion to dismiss or for other relief that was filed on February 10, 1997; that Majekodunmi's right to a speedy trial was violated; and that Count I is duplicitous, so must be dismissed. The court addresses Majekodunmi's second and third contentions above in sections P. and A., respectively. The court will address his first contention briefly here.

On February 10, 1997, Majekodunmi filed a motion to dismiss, or in the alternative, to set a trial date with a discovery and motions schedule. The gist of the motion was that Majekodunmi was being held for a protracted period of time without being able to review the government's charges or prepare

for trial. Majekodunmi contends that Chief Judge Aspen wrongly refused to hear the motion; that the motion was reset before Magistrate Judge Ashman; that Magistrate Judge Ashman had no authority to rule on the motion; and that Chief Judge Aspen should have granted the motion.

First, Majekodunmi's argument in his February 10, 1997, motion to dismiss is redundant of his speedy trial argument addressed in section P. above. Thus, for the reasons set forth above, Majekodunmi's rights were not violated by his detention for five months prior to the return of the indictment against him.

Second, Majekodunmi's argument is now moot, since an indictment has been returned and a trial date and pre-trial motion and discovery schedule set. Thus, there is no need to revisit the February 10, 1997, motion, since Majekodunmi has received what he requested in that motion.

Third, Majekodunmi's argument essentially asks the court to review Chief Judge Aspen's and Magistrate Judge Ashman's earlier decisions. As the court already has noted, this court does not sit as an appellate court with the power to review the decisions of other judges in this district. *See* section P. above.

Accordingly, Majekodunmi's motion to dismiss incorporating the allegations of his February 10, 1997, motion to dismiss is denied.

### W. *Motion for discovery of certain items in the government's possession*

Defendant Anthony Smith moves the court to order the government to disclose certain information to Smith. Specifically, Smith seeks disclosure of (1) numerous items that support or contain information reflected in the affidavits supporting Smith's extradition to the United States; (2) the identity and qualifications of any experts the government intends to call and a summary of the witnesses' testimony, opinions, and bases and reasons for those opinions; and (3) each and every item the government intends to introduce in its case-in-chief so that Smith can prepare appropriate motions to suppress.

### 1. Items supporting extradition affidavits

The government responds that it is not in possession of any transcripts or pleadings involved in Smith's extradition, but has turned over its extradition request to Smith. The government contends that there is nothing else to turn over to Smith at this time. However, the government states that it will ask the Drug Enforcement Agency in Thailand to determine if such a record exists; if such a record exists, the government will inform Smith how he can obtain it.

Smith counters that agents of the United States were present at various times and places during his arrest and detention in and extradition from Thailand, and that these agents have made allegations concerning Smith. Smith also contends that he was interviewed by and made statements to United States agents, and that a Drug Enforcement Agency agent may have testified at his extradition hearing. Smith asks for copies of the interviews, statements, and report of the Drug Enforcement Agency agent's testimony at the extradition proceedings.

The court finds that Smith is entitled to the information he seeks. However, the court notes that the government has represented that it does not have the information Smith seeks. To the extent that the information is within the possession of the United States or can be obtained by it, Smith's motion is granted and the government is ordered to produce such information to Smith. To the extent that the government does not have or cannot obtain such information or already has produced it, the motion is denied as moot.

### 2. Expert witness information

The government failed to respond directly to Smith's request for information regarding possible expert witnesses. However, with respect to other defendants' requests for expert information, the government has represented that it has turned over reports of handwriting and fingerprint analysis, and has not yet determined whether it will offer any additional expert testimony. The government has represented that it is aware of its

obligations under Federal Rule of Criminal Procedure 16(a)(1)(E), and if it elects to rely on any expert testimony at trial, it will comply with the disclosure requirements of Rule 16.

The court assumes that the government will make the same disclosure to Smith. Therefore, based on the government's representations, the court denies Smith's motion as moot. However, if the government fails to make the expert disclosures that it has made to other defendants, Smith is given leave to renew his motion.

### 3. Evidence in case-in-chief

Finally, Smith asks the government to disclose or produce to him every piece of evidence that the government intends to use in its case-in-chief, so that he may prepare appropriate motions to suppress. The government contends that Smith's request should be denied because Smith has what the government has, that the government has turned over reports in its possession, and that it is aware of its obligations under Federal Rule of Criminal Procedure 16, Local Rule 2.04, and the Jencks Act, 18 U.S.C. § 3500. In short, according to the government, it has exceeded its discovery requirements.

The government also argues that if detailed information regarding how phones were traced to Smith is not in a report in the government's possession, then the government objects to being required to fill Smith in orally on the phone tracing.

The court finds that the government has exceeded its discovery obligations, and has provided more than enough information to Smith to allow him to prepare his defense. Smith "is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Kendall*, 665 F.2d at 135.

In sum, the court finds that Smith possesses sufficient information to enable him to file appropriate motions to suppress, and therefore denies his motion for discovery of all

---

5. For the benefit of defendants and their counsel, the court will set forth the motions and their

evidence the government intends to introduce against him at trial.

### X. *Motion for early return of subpoenas*

Defendant Anthony Smith moves for early return of subpoenas. The court denies the motion as moot, because the court already has granted such motion of the government and made it reciprocal as to all defendants, including Smith. *See* Minute Order dated April 10, 1997.

Smith also requests assistance from the United States Marshal's Office in subpoenaing witnesses. Though his request is unclear, it appears to the court that Smith is seeking assistance in serving witnesses in foreign countries, such as Thailand, from which he was extradited. However, he has provided no legal authority for his request. Accordingly, it is denied without prejudice. If Smith wishes to renew the request, he may, but he must clarify it and provide legal support for his proposition that the court has authority to direct the Marshal's Office or other government agency to serve subpoenas to witnesses in another country.

### Y. *Motion for reciprocal discovery*

The government moves the court to order reciprocal discovery as to defendant Anthony Smith, as it did with his co-defendants. The court grants the government's motion.

### CONCLUSION

For the foregoing reasons, the court disposes of defendants' motions as follows: [5]

#### *Anthony Smith*

1. Motion for an order requiring the government to give notice of its intention to use other crimes, wrongs, or acts evidence is denied as moot.

2. Motion for an order requiring the government to file a written *Santiago* proffer is denied as moot.

3. Motion for a bill of particulars is denied.

4. Motion for an order requiring production of informants is denied.

dispositions by defendant.

5. Motion to dismiss Count One on grounds that it is duplicitous is denied as moot.

6. Motion for discovery of certain items in the government's possession is denied as moot in part, denied in part, and granted in part.

7. Motion for early return of trial subpoenas is denied as moot in part and denied in part.

### Kafayat Adedolapo Windokun

1. Motion for severance is denied.

2. Motion for disclosure of 404(b) material is denied as moot.

3. Motion for production of *Santiago* memorandum within 60 days is denied as moot.

4. Motion for pre-trial hearing on admissibility of co-conspirator statements is denied.

### Folake Olukoga

1. Motion for determination on admissibility of co-conspirators' statements and to require production of *Santiago* memorandum is denied as moot in part and granted in part.

2. Motion for production of impeaching and exculpatory information is denied as moot.

3. Motion for production of co-defendants' or co-conspirators' statements and cooperation agreements is denied in part and granted in part.

4. Motion for production of witness list is denied.

5. Motion for an order requiring the government to give notice of its intention to use other crimes, wrongs, or acts evidence is denied as moot.

6. Motion for disclosure of grand jury minutes is denied.

7. Motion for immediate disclosure of favorable evidence is denied as moot.

8. Motion to dismiss indictment for violation of the Speedy Trial Act is denied.

### Jumoke Soneye

1. Motion to require notice of intention to use other crimes, wrongs, or acts evidence is denied as moot.

2. Motion to identify co-conspirators is denied in part and granted in part.

3. Motion for discovery of reports of expert witnesses is denied as moot.

4. Motion for disclosure of existence of informers is denied.

### Tajudeen Aroworade

1. Motion for disclosure of exculpatory evidence is denied as moot.

2. Motion for immediate disclosure of favorable evidence is denied as moot.

3. Motion for an order requiring the government to give notice of its intention to use other crimes, wrongs, or acts evidence is denied as moot.

4. Motion for a *Santiago* hearing on admissibility of co-conspirators' statements is denied.

5. Motion for a proffer of evidence is denied as moot.

### Victoria Olabunmi Onimole

1. Motion for determination on admissibility of co-conspirators' statements and to require production of *Santiago* memorandum is denied as moot in part and granted in part.

2. Motion for production of impeaching and exculpatory information is denied as moot.

3. Motion for notice of intention to use evidence of other crimes, acts, and wrongs of any defendant is denied as moot.

4. Motion for production of witness list is denied.

5. Motion for disclosure of grand jury minutes is denied.

6. Motion to dismiss Count One on grounds that it is duplicitous or to require the government to elect which charge it wishes to proceed on is denied as moot.

7. Motion for severance is denied.

### Mornkat Adola Asanike

1. Motion for leave to file additional pre-trial motions is denied.

2. Motion to preserve agents' notes is denied as moot.

3. Motion for production of post-conspiracy and post-arrest statements of co-conspirators is denied in part and granted in part.

4. Motion for production of favorable evidence is denied as moot.

5. Motion for notice of the government's intention to introduce evidence of other crimes, wrongs, or acts is denied as moot.

### Akintoye Sode

1. Motion for disclosure of exculpatory evidence is denied as moot.

2. Motion for pre-trial hearing on admissibility of co-conspirators' statements is denied.

3. Motion for discovery is denied as moot in part, denied in part, and granted in part.

### Odunyemi Awolesu

1. Motion for production of informants and disclosure of relevant criminal background and financial information is denied.

### Mukaila Balogun

1. Motion for severance is denied.

2. Motion for a bill of particulars is denied.

3. Motion for an order requiring the government to give notice of its intention to use other crimes, wrongs, or acts evidence is denied as moot.

4. Motion for immediate disclosure of favorable evidence is denied as moot.

5. Motion to dismiss indictment for a violation of the Speedy Trial Act is denied.

6. Motion to dismiss Count One on the grounds that it is duplicitous or to require the government to elect which charge it wishes to proceed on is denied as moot.

### Adebayo Majekodunmi

1. Motion for immediate disclosure of impeaching information and production of favorable evidence is denied as moot.

2. Motion for disclosure of electronic or other surveillance is denied as moot.

3. Motion to require production of *Santiago* memorandum within 60 days is denied as moot.

4. Motion for pre-trial hearing on the admissibility of co-conspirators' statements is denied.

5. Motion for disclosure of existence of informers is denied.

6. Motion for pre-trial production of list of witnesses is denied.

7. Motion to compel immediate disclosure of existence and substance of promises of immunity, leniency, or preferential treatment is denied as moot.

8. Motion for a bill of particulars is denied.

9. Motion for immediate pre-trial production of all Jencks Act material is denied as moot.

10. Motion for an order requiring the government to give immediate notice of its intention to use evidence of other crimes, wrongs, or bad acts is denied as moot.

11. Motion to dismiss the indictment is denied.

12. Motion for discovery request under the federal sentencing guidelines is denied.

13. Motion for severance is denied.

14. Motion to strike prejudicial surplusage from indictment is denied.

### Olajumoke Hall

1. Motion for immediate disclosure of favorable evidence is denied as moot.

2. Motion for a bill of particulars is denied.

3. Motion to dismiss Count One on the grounds that it is duplicitous or to require the government to elect which charge it wishes to proceed on is denied as moot.

4. Motion for entry of order requiring the government to file a written *Santiago proffer* is denied as moot.

5. Motion for discovery of certain items in the government's possession is denied as moot in part and denied in part.

6. Motion to dismiss indictment for a violation of the Speedy Trial Act is denied.

7. Motion for an order requiring the government to give notice of its intention to use other crimes, wrongs, and acts evidence is denied as moot.

8. Motion for severance is denied.

*The Government*

1. Motion for reciprocal discovery as to defendant Anthony Smith is granted.