Hector GRANADA, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 94–2987.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1995.

Decided March 23, 1995.

Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Hector Granada appeals from the district court's denial of his motion to set aside his convictions pursuant to 28 U.S.C. § 2255. We affirm.

A jury convicted Granada of conspiracy to distribute cocaine, 21 U.S.C. § 846, distribution of cocaine, 21 U.S.C. § 841(a)(1), and four counts of using a telephone to facilitate the distribution of cocaine, 21 U.S.C. § 843(b). Granada was sentenced to 121 months' imprisonment. We affirmed the convictions and sentences of Granada and several codefendants on direct appeal. *United States v. Mojica,* 984 F.2d 1426 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). We declined to rule on Granada's claim that he had received ineffective assistance of counsel because his allegations depended upon evidence outside the record, and we stated that Granada was free to raise this claim in a collateral proceeding. *Id.* at 1452–53; *see Guinan v. United States,* 6 F.3d 468, 472 (7th Cir.1993). Granada then filed this motion under 28 U.S.C. § 2255, asserting that his trial counsel was constitutionally ineffective.

In reviewing the district court's denial of Granada's section 2255 motion, we consider all questions of law *de novo* and review all factual determinations for clear error. *Stoia v. United States,* 22 F.3d 766, 768 (7th Cir.1994). In order to succeed on his claim of ineffective assistance of counsel, Granada must demonstrate that (1) counsel's performance was deficient, and (2) this deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient if it falls below an "objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2064–65. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the

Glenn Seiden, Lawrence Edmund Sommers (argued), Seiden & Associates, Chicago, IL, for petitioner-appellant.

Barry Rand Elden, Asst. U.S. Atty., Stephen Heinze (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for respondent-appellee.

identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Prejudice to the defendant is established only upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The result of the proceeding must also be fundamentally unfair or unreliable. *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

■ Granada contends that his trial counsel, Robert G. Clarke, was constitutionally ineffective because he failed to file a pretrial motion for severance after Granada provided him with affidavits of fifteen codefendants prior to trial. Granada asserts that these affidavits contradicted the incriminating testimony of the government's informant. Granada attached what he claimed were "true and correct" copies of fourteen of these affidavits to his section 2255 motion. Granada's attachments, however, could not possibly have been given to Clarke before trial because the affidavits are dated between July 12, 1992, and April 13, 1993. Granada was indicted in January 1989 and convicted on September 18, 1989. Clarke submitted his own affidavit in the district court, which states that Granada never presented these documents to him before or during Granada's trial.

As the government points out, fourteen different "affidavits" of codefendants were included in the record on direct appeal of Granada's conviction in June 1990. Only one of these fourteen documents meets the legal definition of an affidavit: "[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Black's Law Dictionary* 58 (6th ed. 1990). The other thirteen documents are neither dated nor notarized. Clarke's affidavit states that during the trial, Granada gave him documents purporting to be affidavits of codefendants, which he reviewed and returned to Granada after concluding that the documents were of no use to his defense.

Even if Granada provided Clarke with these fourteen "affidavits" prior to trial, Clarke's failure to file a pre-trial motion for severance based on these documents was not objectively unreasonable under *Strickland.* We have repeatedly emphasized the "strong interest in joint trials of those who engaged in a common enterprise." *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). "The presumption in favor of joint trials is especially strong when the defendants are charged with conspiracy." *United States v. Chrismon,* 965 F.2d 1465, 1476 (7th Cir.1992). "When the reason for requesting severance is to obtain the testimony of a co-defendant, the district court 'should consider three factors: (1) whether the co-defendant's testimony would be exculpatory; (2) whether the co-defendant would in fact testify; and (3) whether the testimony would bear on defendant's case.'" *Id.* (citation omitted). The fourteen "affidavits" were insufficient to form the basis for a pretrial motion for severance under this standard.

■ The "affidavits" state uniformly in relevant part that "I declare that I know to [sic] Mr. Hector Granada, during the last five years, and I know that he has not been involved in any ilegal [sic] activities, since that [sic] I know him. . . . I can go to swear with any jury or any—federal judge if necessary." These conclusory statements contain no exculpatory facts and do not rebut any of the evidence presented by the government at trial, including taped conversations between Granada and the government's informant. "Severance cannot be granted on the basis of a vague, unsupported assertion that a codefendant would testify favorably in a separate proceeding." *United States v. Andrus,* 775 F.2d 825, 847 (7th Cir.1985). This testimony also would have had little bearing on Granada's defense. There is no requirement that a

member of a conspiracy know the identity of all other coconspirators. *E.g., United States v. Boucher,* 796 F.2d 972, 975 (7th Cir.1986). The fact that some members of a conspiracy are unaware of the involvement of a coconspirator therefore has "minimal significance." *United States v. Nevils,* 897 F.2d 300, 305 n. 3 (8th Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 125, 112 L.Ed.2d 93 (1990). Because these documents were clearly insufficient to support a motion for severance under *Chrismon,* Clarke's failure to file such a motion was not outside "the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

■ Granada next contends that Clarke was constitutionally ineffective because he failed to adequately investigate his defense. Granada asserts that Clarke failed to obtain unbiased translations of the taped conversations between Granada and the government's informant. Clarke's affidavit, however, states that he hired two translators to review the portions of the government tapes and transcripts in which Granada claimed discrepancies existed. Clarke also called one of these translators, Victoria Funes, to testify at trial concerning the one possible discrepancy she had found in her review of the tapes and transcripts. Unfortunately for Granada, Funes confirmed the accuracy of the translation of other incriminating portions of the taped conversations on cross-examination.

Granada's claim fails to satisfy either prong of *Strickland.* "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. at 2066. Granada has provided no evidence which contradicts Clarke's affidavit and thus has failed to establish that Clarke's investigation of the alleged discrepancies was unreasonable. "In order to establish prejudice resulting from a failure to investigate, the defendant must make 'a comprehensive showing of what the investigation would have produced.'" *United States v. Balzano,* 916 F.2d 1273, 1296 (7th Cir.1990) (citations omitted). Granada has not identified a single government error in translating the tapes. Granada therefore has not established preju-

dice from Clarke's alleged failure to obtain unbiased translations.

■ Granada asserts that Clarke failed to interview eight of twelve witnesses named by Granada "who could have had exculpatory evidence." This assertion is contradicted by Clarke's affidavit, which states that Clarke interviewed all witnesses named by Granada. Clarke called four of these witnesses at trial to prove that Granada had a legitimate jewelry business. Granada has not shown that Clarke's failure to call additional witnesses was anything other than a strategic decision, nor has Granada shown that Clarke did not exercise reasonable professional judgment in making this decision. "The Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." *Balzano,* 916 F.2d at 1294. Granada has also not established prejudice from Clarke's failure to call additional witnesses because he has not identified who these witnesses were or what their testimony would have been.

■ Granada's final claim of ineffective assistance is that Clarke failed to adequately communicate with him. Adequate consultation between attorney and client is an essential element of the effective assistance of counsel. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. "From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* Granada claims that he is unable to speak English and Clarke provided an interpreter at only two of their five pretrial meetings. Granada further asserts that Clarke did not provide him with a copy of the indictment, did not read through the indictment with him, and did not inform him that Granada could call witnesses on his behalf until after the trial began, at which time Granada gave Clarke his list of twelve witnesses. Most significantly, Granada con-

tends that Clarke never informed him of his right to testify in his own defense at trial. The district court's finding that these claims are unsupported by the record is not clearly erroneous.

█ Granada's claims are once again refuted by Clarke's affidavit, which states in relevant part as follows:

In general, I was able to communicate fairly well with Granada in English. I sometimes had a Spanish-speaking interpreter present when Granada and I met, but when there was no interpreter he and I were still able to communicate with one another.

Early in my representation of Granada, I gave him a copy of the indictment in the case, and we went through the indictment together.

I discussed trial strategy with Granada at length.... Granada and I also discussed whether he ought to testify in his own defense at trial. Granada said that he wanted to testify, and I told him that my recommendation was that he not take the stand. I also told Granada that he could disregard my recommendation and had an absolute right to testify if he chose to do so.

Granada's assertion that he is unable to speak English is also refuted by the trial testimony of two of Granada's witnesses, Robert Katz and Laury Rose. Katz testified that Granada spoke "very good" English when he first met Granada in 1975. Rose testified that he was Granada's friend and business associate, even though Rose spoke "just a few words" of Spanish.

█ Clarke's alleged failure to inform Granada that he could call witnesses on his behalf until after the trial began did not prejudice Granada. Clarke's affidavit states that he interviewed all twelve witnesses named by Granada and called four of these witnesses to testify at trial. Finally, even if Granada's claim that Clarke never informed him of his right to testify at trial is true, no prejudice resulted to Granada. The following colloquy demonstrates that Granada was clearly informed of this right by the district court during the trial:

THE COURT: All right. Then, Mr. Hector Granada, again, I want to advise you, sir, of your right to testify, if you choose to do so and your Constitutional right not to testify, if that be your choice. That is your personal choice, not that of your attorney's; and in the event you choose not to testify, I will indicate to the jury that they are not to take that into account in coming to their conclusions on this case. Do you understand those things? Do you understand that?

GRANADA: (Through an interpreter) Yes.

THE COURT: Is it your choice to testify or not to testify, sir?

GRANADA: (Through an interpreter) No.

THE COURT: All right.

Tr. 3436.

For the foregoing reasons, the judgment of the district court is AFFIRMED.