# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3385

CARLOS GALLO-VASQUEZ,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 5051—**Ruben Castillo**, *Judge.*

———————

ARGUED JANUARY 20, 2005—DECIDED APRIL 1, 2005

———————

Before FLAUM, *Chief Judge*, and BAUER and KANNE,
*Circuit Judges.*

FLAUM, *Chief Judge*. Carlos Gallo-Vasquez moved to va-
cate, set aside, or correct his sentence under 28 U.S.C.
§ 2255, alleging that his counsel at trial and on direct ap-
peal provided him with ineffective assistance. The district
court dismissed the motion without holding a hearing or
requiring the government to respond. Gallo-Vasquez appeals.
Because the record conclusively shows that petitioner is not
entitled to relief, we affirm.

## I.  Background

In August 2000, United States customs officials intercepted a truck crossing the U.S.-Mexican border carrying 5,000 pounds of marijuana hidden inside sacks of charcoal. After determining that the truck was destined for Chicago, the customs officials handed the vehicle over to the Chicago police. On August 9, 2000, an undercover Chicago police officer drove the truck to the suspected delivery address. The officer found no one at that location to receive the delivery and, posing as an ordinary driver, called around to figure out where to take the truck. The undercover officer was instructed to drive the truck to a warehouse on Chicago's south side. He arrived and parked the truck at a loading dock towards the rear of the warehouse. Six or seven men began unloading the sacks from the truck, while another man, later identified as Gallo-Vasquez, monitored their work. Once the unloading was complete, the undercover officer asked one of the men to sign the bill of lading. He directed the officer to Gallo-Vasquez, who signed the form using a false name. After the undercover officer left, law enforcement agents raided the warehouse and arrested Gallo-Vasquez and seven others.

Petitioner was indicted for possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Trial was scheduled to begin on March 5, 2001. On February 24, 2001, Gallo-Vasquez, who is a Mexican citizen, sent a letter written in his native language of Spanish to the presiding judge asking that his attorney be removed. The certified English translation of the letter alleges an ongoing disagreement between Gallo-Vasquez and his counsel. The letter describes in detail a series of steps that Gallo-Vasquez purportedly asked his attorney to take in preparation for the trial. For example, petitioner asserted in the letter that he had requested that his counsel subpoena five specified potential witnesses, believing that they might have evidence that would prove

his innocence. The correspondence to the court relates that petitioner described to his counsel why the witnesses' testimony would be crucial to his defense. According to the letter, however, counsel refused to subpoena the individuals and explained to petitioner that the information would be irrelevant to the issues likely to be contested if the case went to trial. Gallo-Vasquez complained in the letter that counsel was not doing anything to prove his innocence, alleging that his attorney instead "has always told me to plead guilty to accept a deal, that that [sic] is the best, because otherwise, I am going to get 10 years in jail." The letter expresses repeatedly petitioner's alarm at and disagreement with counsel's advice: "I consider myself a defenseless person . . . . he has failed to do all the things I have requested of him . . . . I consider myself under the pressure of my attorney to plead guilty . . . . A TRIAL CANNOT BE WON WITHOUT ANY BASIS to prove my innocence." It concludes, "[f]or all these reasons . . . I am addressing you, Honorable Judge Castillo, to request that my attorney be removed, and if it is necessary for me to plead guilty in order to prove my innocence and so that you can hear me out, I will do so."

On February 27, 2001, Gallo-Vasquez moved pro se to dismiss his counsel. The motion requested that the district court "ALLOW [Gallo-Vasquez] A[N] ATTORNEY WHO WILL PROTECT HIS 6th AMENDMENT RIGHT" and "ENABLE [him] SOME FAIR PLAY AT TRIAL." Neither the letter nor the motion mention any communication problems between Gallo-Vasquez and his counsel.

On February 28, 2001, the district court held a status hearing during which the parties addressed the letter and the motion. Defense counsel denied the accusations in the letter, stated that he was ready to go to trial, but moved to withdraw at Gallo-Vasquez's request. Petitioner advised the district court through an interpreter that he believed that his counsel was not adequately prepared. The court denied

the motion to withdraw, finding that "Mr. Gallo-Vasquez is manipulating the criminal justice system by sending this letter to me at the last minute . . . . [T]his is a deliberate attempt on the part of a defendant who is concerned about proceeding to trial for a lot of different reasons."

The case went to trial as scheduled. The government presented evidence that Gallo-Vasquez managed the drug shipment, including testimony from one of the men arrested at the warehouse that petitioner had directed their unloading of the truck. With the aid of an interpreter, Gallo-Vasquez testified on his own behalf, asserting that he had flown from Mexico to Chicago intending to visit a friend, that an unknown man approached him just outside O'Hare airport and offered him a job moving sacks of charcoal, and that he accepted the job without knowing that the sacks contained drugs. During his testimony, Gallo-Vasquez admitted that he spoke some English and described an exchange where he asked someone, in English, for directions. At a few points, petitioner restated his answers in English when the interpreter had difficulty translating his responses. The jury found him guilty.

Petitioner moved for a new trial. Counsel advised that Gallo-Vasquez spoke enough English that an interpreter would not be necessary for the hearing on the motion. The hearing proceeded without an interpreter and without objection from Gallo-Vasquez. The motion for a new trial was denied.

Prior to sentencing, the United States Probation Office prepared a presentence report recommending, among other things, that Gallo-Vasquez receive a three-level upward adjustment for his supervisory role in the offense. *See* United States Sentencing Guideline ("U.S.S.G") § 3B1.1(b). Gallo-Vasquez filed an objection to the recommendation and moved the court to depart downward because of his status as a deportable alien. The government filed a memorandum

in support of the upward adjustment, but in opposition to the downward departure. At the sentencing hearing, the court heard additional argument on these points, found the upward adjustment warranted, and, over the prosecution's objection, granted a four-level downward departure based on petitioner's status as a deportable alien. The court sentenced Gallo-Vasquez to 135 months of imprisonment and entered its final judgment on June 26, 2001.

On June 28, 2001, Gallo-Vasquez's trial counsel filed a notice of appeal. On July 23, 2001, the government cross-appealed. Petitioner's trial counsel withdrew and was replaced by an assistant federal public defender. On direct appeal, defendant's new counsel argued that the district court had erred by imposing the supervisory-role enhancement. The crux of the argument was that there had been insufficient evidence that five or more other people were involved in the offense. *See* U.S.S.G. § 3B1.1(b) (applicable only where defendant managed or supervised five or more participants in the crime). We affirmed the enhancement, concluding that there was ample evidence justifying the district court's finding on this point. *United States v. Gallo-Vasquez*, 284 F.3d 780, 783-84 (7th Cir. 2002).

The government contended in its cross-appeal that the district court abused its discretion in granting the downward departure based on petitioner's status as a deportable alien. We noted that "a 'defendant's status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense.'" *Id.* at 784 (quoting *United States v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001)). Because the district court had not articulated specifically why Gallo-Vasquez's status met this test, we reversed and remanded with instructions that it reconsider the issue and make additional findings if it again decided to depart. *Id.* at 785.

On remand, the district court found that the downward departure was not justified and resentenced Gallo-Vasquez to 210 months of imprisonment.

On July 14, 2003, Gallo-Vasquez filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The motion contends that trial counsel provided him with ineffective assistance by: (i) convincing Gallo-Vasquez unwisely to reject a plea agreement allegedly offered by the government; and (ii) failing to bring an interpreter to any of their out-of-court meetings, despite Gallo-Vasquez's purported inability to speak more than a few words of English. The motion also asserts that petitioner's counsel (both trial and appellate) rendered ineffective assistance by filing a meritless appeal that opened the door to a sentence enhancement on remand. The motion did not attach any affidavits or other documentary support aside from a photocopy of one page of the district court's docket sheet displaying the name of Gallo-Vasquez's trial counsel. The district court dismissed the motion without holding a hearing or requiring the government to respond. Petitioner appeals, contending that the district court erred by summarily dismissing his claims.

## II. Discussion

A district court may dismiss a § 2255 motion without holding a hearing or requiring the government to respond if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶2. "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified." Rule 4(b) of the Rules Governing Section 2255 Proceedings (2003). "[A] hearing is not necessary if the petitioner makes

conclusory or speculative allegations rather than specific factual allegations." *Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995). "[T]he district court is entitled to consider all the circumstances in the record in determining whether a hearing should be afforded." *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989) (quoting *Day v. United States*, 357 F.2d 907, 910 (7th Cir. 1966)).

## A. Plea Negotiations

Gallo-Vasquez asserts that the government offered him a plea bargain that contemplated a 48-month sentence, and that his trial counsel provided him with ineffective assistance by advising him to reject the offer. He contends that counsel persuaded him to go to trial, despite the near certainty that he would be convicted. Had he been competently advised, Gallo-Vasquez alleges, he would have accepted the government's offer.

To prevail on a claim of ineffective assistance of counsel, petitioner must satisfy the two-part test first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We have recognized that counsel's performance may fall below the minimum threshold if he advises his client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses. *See Toro v.*

*Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991). The record shows, however, that petitioner was not advised to reject a plea agreement. First, Gallo-Vasquez's letter repeatedly complains about counsel's consistent advice that he should *accept* a plea agreement if one were offered. According to the letter, counsel explained that Gallo-Vasquez was certain to be convicted and sentenced to a significant term of imprisonment if he went to trial. The district court was correct to look beyond the face of the motion and consider this evidence. *Aleman*, 878 F.2d at 1012. Second, aside from the allegation contained in Gallo-Vasquez's motion, there is no evidence that the government offered petitioner a deal. The motion does not attach a copy of the proposed agreement, state when or by whom the offer was made, or give any details other than to assert that it contemplated a 48-month sentence. *See Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) ("in order for a hearing to be granted, the [motion] must be accompanied by a detailed and specific affidavit") (quoting *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976)).

Even if Gallo-Vasquez could show that he was offered a bargain and advised to reject it, the record reflects that he would not have been prejudiced by the advice. In this context, prejudice means "a reasonable probability that, but for counsel's inadequate performance, [petitioner] would have accepted the government's offer." *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998). The record shows exactly the opposite: that Gallo-Vasquez rejected advice that he plead guilty. Petitioner's letter describes consistent pressure from his counsel to cut a deal with the government. Rather than succumb, Gallo-Vasquez wrote to the district court to assert his innocence and request a new lawyer, and filed a motion pro se demanding an attorney who would afford him "SOME FAIR PLAY AT TRIAL." Undeterred when these efforts failed to garner him new counsel, petitioner went to trial, took the stand, and steadfastly

professed his innocence. This record does not leave room for a reasonable probability that, but for counsel's advice, Gallo-Vasquez would have accepted a plea agreement.

The statement in the last line of petitioner's letter that he would have been willing to plead guilty, taken in context, does not undercut this conclusion. Gallo-Vasquez refers to pleading guilty in this connection as an opportunity "to prove [his] innocence" and to enable the district court to "hear [him] out," not as a way to accept responsibility and punishment for his actions. Petitioner's statements elsewhere in the letter make clear that he was not willing to plead guilty if it meant admitting that he had committed the crime and accepting a sentence of imprisonment. Given this record, the district court did not need to hold a hearing to determine whether petitioner would have rejected a plea bargain.

## B. Interpreter

Petitioner also asserts that he speaks virtually no English, and that his trial counsel was ineffective by failing to bring an interpreter to any of their out-of-court meetings. Counsel's inability to communicate with his client because of a language barrier may render his assistance constitutionally ineffective. *Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995).

The record and prior proceedings demonstrate, however, that a language barrier did not prevent petitioner and his counsel from communicating. Gallo-Vasquez testified under oath at trial that he spoke some English, described an exchange where he asked someone, in English, for directions, and translated his own answers from Spanish to English when the court's interpreter hesitated momentarily. Petitioner's trial counsel also represented to the court that Gallo-Vasquez could understand the hearing on the motion for a new trial without an interpreter. Moreover, petitioner

did not raise the language barrier issue in his letter to the district court, pro se motion to dismiss counsel, at the pre-trial status hearing (despite the presence of a translator), during trial, at sentencing, or on direct appeal.[1]

Finally, petitioner's contentions that he speaks almost no English and that counsel never brought a translator to their out-of-court meetings are incompatible with his statements in the letter to the district court. The letter describes a complex debate between counsel and petitioner about which witnesses to subpoena, what they likely would say, and why their anticipated testimony would or would not be relevant to the theory of defense. The letter recounts that counsel advised petitioner to plead guilty, explained why pleading was the best option, discussed the risks of going to trial, and forecasted the likely sentence if convicted. This dialogue could not have taken place if the language gap was as wide as petitioner now claims. The district court was correct to summarily dismiss this claim.

## C. Appeal

Gallo-Vasquez also contends that his trial and appellate counsel were ineffective in filing the notice of, and arguing, his appeal. According to petitioner, the prosecution warned his trial counsel that if he appealed, the government would cross-appeal the district court's downward departure based on petitioner's status as a deportable alien. Gallo-Vasquez alleges that his trial counsel filed the notice of appeal anyway, and never communicated the warning to him. On

---

[1] We do not suggest that the claim was procedurally defaulted. *See Massaro v. United States*, 538 U.S. 500, 509 (2003). Nevertheless, petitioner's failure to complain earlier about a problem that would have been obvious to him—an almost complete inability to communicate with his lawyer—calls into question whether such a problem really existed.

appeal, moreover, appellate counsel argued that the super-
visory-role enhancement was unwarranted, an argument
that Gallo-Vasquez contends his lawyer should have known
had no chance of success. Petitioner argues that counsel
also should have anticipated that the government's cross-
appeal would be successful and result in a sentence en-
hancement on remand. Rather than take this one-sided
gamble, Gallo-Vasquez contends that counsel should have
advised him to forgo an appeal, and that if he had been so
advised, he would have agreed.

A defendant is entitled to effective assistance of counsel
on direct appeal. *Page v. Frank*, 343 F.3d 901, 909 (7th Cir.
2003). We have observed that counsel may perform compe-
tently by advising his client not to appeal when a remand
likely will do more harm than good. *See Howard v. Gramley*,
225 F.3d 784, 791 (7th Cir. 2000) (noting that counsel might
be wise to choose not to appeal where there is the "threat of
a sentence-enhancing remand that might make the risks of
an appeal outweigh its potential benefits"); *see also United
States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002) ("Appellate
lawyers are not obliged to raise issues that could boomerang
on their clients; it is no failure of advocacy to leave well
enough alone."). Petitioner asks us to recognize that counsel
who does not give this advice is incompetent.

We need not resolve the issue, however, because
petitioner's conclusory allegations, when contrasted with
the record, do not entitle him to a hearing on the issue of
prejudice. Gallo-Vasquez's motion alleges baldly that counsel
was warned, outside of petitioner's presence, not to appeal.
The motion does not attach an affidavit from defense counsel
or the prosecutor supporting this allegation. It does not de-
scribe when or how the alleged warning took place, or explain
how Gallo-Vasquez came to learn of it. *See Bruce v. United
States*, 256 F.3d 592, 597 (7th Cir. 2001) ("A hearing is not
necessary if the petitioner makes allegations that are 'vague,

conclusory, or palpably incredible,' rather than 'detailed and specific.' ") (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Aside from the motion, moreover, there is no indication that the government's cross-appeal was contingent upon counsel's decision to challenge the supervisory-role enhancement. The government spent substantial time and energy opposing the downward departure before the district court. A significant majority of its brief was dedicated to arguing against the departure, and it objected again at the sentencing hearing. We have no reason to suspect that it would have let these efforts go to waste by forgoing an appeal, especially if, as petitioner contends, a competent attorney would have known that the appeal would be successful. And a reversal would be significant to the government; the sentence was increased by 75 months. Moreover, this is not a case where the government's cross-appeal was timely only because the defendant appealed. *See* Fed. R. App. P. 4(b)(1)(B)(ii).[2] The prosecution's notice was filed within 30 days of the judgment and would have been timely regardless of defense counsel's actions. *See* Fed. R. App. P. 4(b)(1)(B)(i). Given the absence of specific allegations or affidavits supporting Gallo-Vasquez's claim, and the strong indication from the record that the government would have appealed irrespective of counsel's decision to challenge petitioner's sentence, we conclude that the district court properly dismissed this claim without holding a hearing.

---

[2]  Appellate Rule 4(b)(1)(B) provides:

> When the government is entitled to appeal, its notice of appeal must be filed in the district court within 30 days after the later of: (i) the entry of the judgment or order being appealed; or (ii) the filing of a notice of appeal by any defendant.

## III. Conclusion

For the reasons stated herein, we AFFIRM the district court's summary dismissal of Gallo-Vasquez's § 2255 motion.

A true Copy:

Teste:

_____
***Clerk of the United States Court of***
***Appeals for the Seventh Circuit***