Craig AMIN, Plaintiff,

v.

**LOYOLA UNIVERSITY CHICAGO,**
Defendant.

No. 05–C–543–C.

United States District Court,
W.D. Wisconsin.

March 31, 2006.

Craig Amin, Ph.D., Pro se.

Michael P. Malone, Hinshaw & Culbertson LLP, Milwaukee, WI, for Defendant.

OPINION AND ORDER

CRABB, District Judge.

In this civil action, plaintiff Craig Amin, proceeding *pro se,* contends that defendant Loyola University Chicago breached its fiduciary duty to him by failing to adequately record and report benefits and to disclose documents relevant to his retirement plan as required under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Jurisdiction is present under 28 U.S.C. § 1331.

Now before the court are (1) plaintiff's "Objections to Defendant's Filed Affidavits," which I construe as a motion to strike the affidavits of Thomas Kelly and Michael Malone; and (2) plaintiff's motion for partial summary judgment, in which he asks the court to enter judgment in his favor with respect to his claim that defendant violated 29 U.S.C. §§ 1024(b) and 1025(a) by failing to provide him with documents relating to defendant's faculty retirement plan. Because plaintiff has not shown that the challenged affidavits are improper in any way, his motion to strike will be denied. Plaintiff's motion for summary judgment will be denied also because he has not shown that he has standing to bring suit under 29 U.S.C. § 1132(a).

## I. PLAINTIFF'S MOTION TO STRIKE

In his "Objections to Defendant's Filed Affidavits," plaintiff contends that the court should strike the affidavits of Thomas Kelly and Michael Malone because they fail to meet various procedural requirements. Specifically, plaintiff contends that Kelly's affidavit should be stricken because it was not authenticated as required under Wis. Stat. § 887.01 and Malone's affidavit should be stricken because it was notarized by attorney Kristofer Hanson, whose permanent commission as a notary public

plaintiff believes is a violation of Wisconsin law. Neither contention has any merit.

■■■ A valid affidavit is "a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Granada v. United States,* 51 F.3d 82, 84 (7th Cir.1995) (citing *Black's Law Dictionary* 58 (6th ed.1990)). Plaintiff challenges the Kelly and Malone affidavits on the ground that the notaries who administered Kelly's and Malone's oaths were not authorized to do so under state law. Plaintiff contends that Kelly's affidavit is invalid because it did not conform to the requirements of Wis. Stat. § 887.01(2), which provides:

> Any oath or affidavit required or authorized by law may be taken in any other state, territory or district of the United States before any ... notary public ... authorized by the laws thereof to administer oaths ... Whenever any such oath or affidavit is certified by any notary public or clerk of a court of record and an impression of his or her official seal is thereto affixed no further attestation shall be necessary.

Kelly's affidavit was notarized by Paula DeAngelo, an Illinois lawyer employed by defendant. Although Illinois law generally prohibits notaries from "acknowledg[ing] any instrument in which the notary's name appears as a party to the transaction," 5 ILCS 312/6–104(b), the law provides that "this prohibition shall not prohibit an attorney, who is also a notary public, from performing notarial acts for any document prepared by that attorney." 5 ILCS 312/6–104(h). *See also* Michael L. Closen & Thomas W. Mulcahy, "Conflicts of Interest in Document Authentication by Attorney–Notaries in Illinois," 87 Ill. B.J. 320 (1999). As defendant's attorney, DeAngelo was authorized to notarize Kelly's affidavit.

With regard to Malone's affidavit, it is unclear why plaintiff takes issue with Hanson's permanent commission as a notary public. All lawyers licensed to practice law in Wisconsin are eligible for permanent notarial commissions. Wis. Stat. § 137.01(2)(a). As an authorized notary public, Hanson was qualified to administer Malone's oath and attest to the affidavit. Because the affidavits of Kelly and Hanson are not improper, plaintiff's motion to strike will be denied.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before I turn to the undisputed facts, several preliminary matters require attention. First, I note that defendant has opposed plaintiff's motion in part on the ground that plaintiff failed to answer interrogatories or attend his scheduled deposition. According to defendant, plaintiff's failure to comply with his discovery obligations has handicapped its efforts to respond to his motion for summary judgment.

■■■ In the court's preliminary pretrial conference order dated Nov. 8, 2005, dkt. # 18, at 9, the magistrate judge warned the parties that if they "d[id] not bring discovery problems to the court's attention quickly, then they c[ould] not complain that they ran out of time to get information that they needed for summary judgment or for trial." If defendant believed that plaintiff was not forthcoming in producing answers to its discovery requests, its remedy was to file a timely motion to compel or impose sanctions, which could include dismissal of the entire case, if plaintiff failed intentionally to appear for his deposition. Defendant did not do so. Therefore, where defendant has attempted to place facts into dispute solely by alleg-

ing discovery violations, plaintiff's proposed facts will be treated as undisputed.

█ A central issue in this case is whether plaintiff was a participant in defendant's Faculty Retirement Plan (also known as the Defined Contribution Retirement Plan) at the time he requested plan documents from defendant. Defendant has proposed as fact excerpts of the text of the plan that defendant believes support its position that plaintiff was not a plan participant. As evidence of the accuracy of its proposed text, defendant has cited the affidavit of Thomas Kelly, defendant's Vice President of Human Resources and the plan administrator. Defendant has not submitted a copy of the plan.

Under Fed.R.Evid. 1004, extrinsic evidence of the content of a document is admissible only when the original document is (1) lost, (2) destroyed, (3) "unobtainable" (4) in the possession of an opponent or (5) not closely related to the matters at issue in the case. Defendant has not indicated that the plan document falls into any of these categories; therefore, Kelly's testimony regarding the content of the plan is inadmissible and will not be considered.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

From February 1999 to June 2001, plaintiff Craig Amin was employed as a research associate by the Loyola University Medical Center, an institution affiliated with defendant Loyola University Chicago. By virtue of his employment with the Loyola University Medical Center, plaintiff was qualified to participate in defendant's Faculty Retirement Plan, also known as the Defined Contribution Plan.

After plaintiff concluded his employment with defendant in 2001, he contacted defendant's human resources department to ask about his participation in the retirement plan. Once he completed the necessary paperwork, plaintiff became eligible to receive a contribution equal to 8% of the total compensation he had received while employed by defendant, minus the amount he had received during his first month of employment.

During the 2001 calendar year, plaintiff earned $14,167.15 as an employee of defendant. Defendant's plan administrator believed that the tax code barred defendant from contributing more than 25% of plaintiff's annual salary to plaintiff's Fidelity Investments retirement plan account. Therefore, defendant deposited only $3,541.68 in plaintiff's account (an amount roughly equal to 25% of plaintiff's 2001 earnings).

From 2001 to 2003, Fidelity Investments provided plaintiff with periodic statements of his account balance and investment results. Some time in 2003, plaintiff withdrew his funds from the Fidelity account.

On September 22, 2003, plaintiff sent an email message to Mary O'Callaghan, the retirement manager for defendant's human resource department, requesting a summary plan description for the faculty retirement program, all summary plan material modification documents for the years 1999–2002, plaintiff's benefits statement, annual plan reports for the years 1999–2002 and any other plan documents or instruments related to the faculty retirement plan that were in effect during the time of plaintiff's employment. Plaintiff's email message contained the following statement:

> These items are required to be revealed within certain time frame [sic] and are not discretionary. I shall provide an address by electronic means where the above requested information can be sent. If there are questions or clarifica-

tions that are required, I can be contacted at amin_craig@yahoo.com.

Amin Aff., dkt. # 31, exh. B. Plaintiff did not provide defendant with his current mailing address.

In October 2003, Dale Moyer, defendant's compensation and benefits manager, sent plaintiff the following email message:

Our attorneys have prepared a Release for your review per the outstanding settlement of $2,189.24.

Because of the confidential nature of this release, I am requesting that you either furnish me with your home address so that I may mail it to you, or, alternately, that we set up a time for you to meet with me here at Loyola so I may give you the agreement in person.

Upon your signature and submission to Loyola of two copies of the agreement, Loyola will make the payment to you within 14 days.

In order to accept this Release, you must return the copies to Loyola before November 1, 2003.

Amin Aff., dkt. # 43, exh. E. On October 13, 2003, a copy of the release agreement was mailed to plaintiff's last known address, but was returned to defendant undelivered.

On May 3, 2004, plaintiff faxed another request to O'Callaghan, requesting the same documents listed in his September 22, 2003 letter. O'Callaghan responded to plaintiff via email, telling him to write to Moyer, the contact person for the faculty retirement plan. On May 5, 2004, plaintiff faxed Moyer a request for the same documents.

On June 2, 2004, Moyer sent plaintiff a letter containing a confidential release agreement, a copy of the plan documents and both full and summary annual reports for the years 1999–2002. Because "there were no summaries of material modification issued [for the plan] between 1999 and 2001," no such summaries were included in the mailing. Cpt., dkt. # 3, exh. 6. The mailing did not include a summary plan description or any benefits statements. In his letter, Moyer stated that defendant was "in the process of having the summary plan printed," and promised plaintiff, "When a copy [of the summary plan] is available, I will forward it to you." *Id.*

On June 11, 2004, plaintiff faxed a letter to Moyer, stating:

Previously, I had sent via facsimile transmission, requests for list [sic] of documents to your office. I had originally sent this request on Sept 22, 2003, addressed to Mary O'Callaghan, Retirement Manager at Loyola University Chicago's (WTC) Human Resources Department. I resubmitted the same request to both Ms. O'Callaghan and you on May 3 and 5, 2004, respectively. Thus far, I have not received the documents from these requests.

Cpt., exh. 5, dkt. 3, at 1. Defendant still has not provided plaintiff with copies of his benefits statements or the summary plan description.

## OPINION

Before a court can address the merits of a plaintiff's legal claim, it must be clear that the plaintiff has standing to raise the claim. *Smith v. Wisconsin Dept. of Agriculture, Trade and Consumer Protection,* 23 F.3d 1134, 1142 (7th Cir.1994) (standing is "jurisdictional prerequisite"). It is well settled that "the irreducible constitutional minimum of standing" contains three elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of .... Third, it must be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The "party who seeks the exercise of jurisdiction in his favor" bears the burden of alleging "facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Id.* at 743, 115 S.Ct. 2431.

■ In order to establish that he has suffered an injury in fact, plaintiff must allege that defendant's actions violated his rights under federal law and that he is authorized to bring suit for the violation. Defendants do not deny that plaintiff submitted a written request for specific documents relating to the faculty retirement plan. In response to plaintiff's request, defendant mailed him a copy of original plan documents, annual reports for the years 1999–2002 and summary annual reports for the years 1999–2002. Defendants did not provide plaintiff with a copy of the summary plan description or copies of his benefits statements. The questions, then, are (1) whether plaintiff was legally entitled to receive a copy of the summary plan description and benefits statements from defendants and (2) whether defendant's failure to provide the documents gave plaintiff ground for bringing suit. As we shall see, the answer to both questions turns on whether plaintiff is a qualified "plan participant," as that term is defined under 29 U.S.C. § 1002(7).

### A. *Right to Plan Documents*

Under 29 U.S.C. § 1024(b)(4),

[t]he administrator [of a plan governed by ERISA] shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies.

Similarly, under 29 U.S.C. § 1025(a),

Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information -

(1) the total benefits accrued, and

(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become non-forfeitable.

A plan administrator must mail any material requested under §§ 1024(b)(4) and 1025(a) "to the last known address of the requesting participant within thirty days," or risk the imposition of discretionary sanctions. 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. 2575.502c–1 (authorizing statutory penalties up to $110 per day for violations occurring after July 29, 1997).

It is undisputed that plaintiff submitted written requests for copies of the summary plan description and benefits statement. Nevertheless, defendant contends that it was not required to respond to his requests because, at the time they were made, plaintiff was not a plan participant. A "participant" in an ERISA plan is "any employee or former employee ... who is or may become eligible to receive a benefit" due under the plan. 29 U.S.C. § 1002(7). The United States Supreme Court has interpreted § 1002(7) to include (1) "employees in, or reasonably expected to be in, currently covered employment" and (2) "former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable

claim to vested benefits." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).

It is undisputed that plaintiff's employment with defendant was permanently terminated in 2001. Therefore, in order to qualify as a plan participant, he must have a "colorable claim to vested benefits under the plan." Defendants contend that when plaintiff withdrew all funds from his Fidelity Investments retirement plan account in 2003, he extinguished any claim he may have had to future plan benefits. Plaintiff concedes that he has no present interest in the plan, but he contends that he has a colorable claim to future benefits he would earn if defendants deposited the money they still owe him into his plan account.

Whether plaintiff is a plan participant appears to rest on the answer to one question: Do defendants owe plaintiff money *under the plan*? If so, plaintiff has a valid claim to future plan benefits and is a plan participant within the meaning of § 1002(7). If he is a plan participant, he has standing to bring a claim against defendants to "enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a). If not, he lacks standing to raise any of his claims. Unfortunately, neither party has proposed facts sufficient to permit the court to determine the answer to this critical question.

The facts reveal that defendant owes plaintiff approximately two thousand dollars. For reasons the parties have not explained satisfactorily, defendant did not or could not contribute this money to plaintiff's retirement plan account directly. Defendant refuses to pay plaintiff the money until he agrees to sign a confidential release agreement absolving defendant of all liability related to its actions. Plaintiff has refused to sign the release.

Under Fed.R.Civ.P. 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff contends that he is entitled to summary judgment because defendant has failed to come forward with "substantial evidence" showing that plaintiff is *not* a plan participant. However,

a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. Because standing is "an indispensable part of the plaintiff's case," plaintiff bears the burden of proving that he has standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lewis v. Casey*, 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

In order to show that he is entitled to summary judgment, plaintiff cannot "rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" demonstrating that he has standing to pursue his claims. *Id.* Defendants were under no obligation to *disprove* plaintiff's standing, particularly when plaintiff had failed to introduce any evidence on the point.

When the facts in this case are developed further, it may become clear that plaintiff has a colorable claim to benefits

vested under the faculty retirement plan. However, on the record before the court, it is impossible to determine whether plaintiff is a plan participant with standing to bring this lawsuit. Because plaintiff has not adduced evidence demonstrating conclusively that he is a plan participant, he is not entitled to summary judgment. Therefore, plaintiff's motion will be denied.

Federal courts have an independent obligation to insure that subject matter jurisdiction exists. *Wild v. Subscription Plus, Inc.,* 292 F.3d 526 (7th Cir.2002). Therefore, before this case may proceed any further, the question whether plaintiff has standing to bring suit must be resolved. The Court of Appeals for the Seventh Circuit has reiterated the need for litigants to meticulously review the limits of federal jurisdiction to prevent the waste of federal judicial resources, *Belleville Catering Co. v. Champaign Market Place, L.L.C.,* 350 F.3d 691 (7th Cir.2003), and has emphasized that federal courts are "always obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Tylka v. Gerber Prods. Co.,* 211 F.3d 445, 447–48 (7th Cir.2000).

As I discussed above, plaintiff bears the burden of showing that he has standing to bring his claim. *Hays,* 515 U.S. at 743, 115 S.Ct. 2431. Because it would be a waste of limited judicial resources to proceed further in a case where jurisdiction may not be present, I will give plaintiff two weeks in which to produce evidence verifying that he has a "colorable claim to vested benefits" under the faculty retirement plan. Specifically, he should submit plan documents and an explanation of the "vested benefits" he believes remain due to him under the plan at this time. If plaintiff does not submit such evidence by April 12, 2006, his case will be dismissed on the court's own motion for lack of subject matter jurisdiction.

### ORDER

IT IS ORDERED that

1. Plaintiff Craig Amin's motion for partial summary judgment is DENIED;

2. Plaintiff may have until April 12, 2006, in which to provide this court with verification of his standing to bring suit as participant in defendant's faculty retirement plan. Failure to comply with this order will result in dismissal of his case for lack of subject matter jurisdiction.